ALEXANDER DUNN *vs.* GRAND TRUNK RAILWAY COMPANY
OF CANADA.

*Common carrier.*

If a person enters the saloon-car of a freight railway train, and, when the train
starts, without being requested or directed to leave, remains there as a passen-
ger, contrary to the rules of the company, but with the knowledge of the con-
ductor, who receives from him the usual fare of a first-class passenger,—the
corporation incurs the same liability for his safety as if he were in their regu-
lar passenger train.

ON EXCEPTIONS to the rulings of *Goddard*, J., of the superior
court for the county of Cumberland.

CASE for an injury alleged to have been received in July, 1868,
while being transported from South Paris to Danville Junction,
through the alleged insufficiency of the track and cars of the defend-
ants, and the careless and negligent manner in managing them.

There was evidence tending to show that the plaintiff entered
the saloon-car attached to the defendants' freight train, at South
Paris station, for the purpose of going to Danville Junction; that
the conductor saw him when the train started, and they conversed
together; that he paid the conductor the usual fare of eighty-five
cents; that the saloon-car was thrown from the track and dumped;
that the plaintiff was thereby injured; that the car was thrown off
by a broken rail, and that the fare was thereupon paid back.

There was evidence on the part of the defense, tending to show
that the conductor notified the plaintiff when the train started that
he had no right to carry passengers on the freight train, which was
denied by the plaintiff.

It also appeared that the defendants issued a notice on May 23,
1866, that after that date "passengers would not be allowed to
travel by freight trains on that part of the line between Portland
and South Paris." On Sept. 8, 1868, they issued notice that "no
passengers will be carried in the brake vans attached to freight

trains without written authority from the superintendent. . . . Any conductor allowing a passenger to travel in the brake van, or on any part of the freight train, will be dismissed."

The defendants requested the presiding judge to instruct the jury:

1. That the plaintiff was not entitled by law to be carried in the freight train of defendant company, as a passenger, unless by permission obtained before he entered the train from some authorized agent of defendants; and that if the jury find that plaintiff entered the freight train at South Paris without such permission, then that plaintiff is not entitled to recover for the alleged injury, and their verdict should be for defendants.

2. That if the jury find that the defendant company, before the time of the injury received as alleged by the plaintiff, had established and published a regulation by which passengers were not allowed to travel by freight trains on that part of the line between Portland and South Paris, and that such regulation was in force at that time, then the plaintiff is not entitled to recover in this action, and their verdict should be for the defendants.

The judge did instruct the jury, *inter alia*, as follows: " I understand that the defense is substantially this, that inasmuch as notices had been issued and published by the directors of the company, prohibiting passengers from riding on freight trains, therefore, this passenger being upon a freight train, the company was not liable for the injury that he received, though the company would have been liable if he had been in a passenger train. If there is any other defense, you have noticed it, and of course you will give them the benefit of it.

" I have been requested to give you a number of instructions touching this particular point, all of which I decline to give except this:

" I do instruct you for the purposes of this case, that the plaintiff was not entitled by law to be carried on the freight train of defendant company, as a passenger, unless by permission obtained before he entered the train from some authorized agent of defend-

ants. I give you that one, and no more. But I also instruct you, that if you find that the plaintiff was allowed by the conductor, upon his entering that car, and upon the starting of the train, to remain as a passenger on that train, in a saloon-car; that on a full knowledge of the facts, the conductor on that train allowed and authorized that man to remain there without directing him to get off, or any attempt to put him off, and that afterwards he received from him pay as a first-class passenger, not only to the next station where the freight train was to stop, but beyond that station to Danville Junction, a further point on the road where the plaintiff desired to go (for I understand the evidence is that he was going to Lewiston, and Danville Junction was the furthest possible point in that direction on this road), then I instruct you that the defendant company cannot plead their regulation in release of their ordinary legal liabilities, but they are just as liable as if it had been a passenger train, and as if there had been no notices, provided that the plaintiff was not guilty of any fault or want of ordinary care himself."

The verdict was for the plaintiff, and the defendants alleged exceptions.

*P. Barnes*, for the defendants.

I. The law of the case is with the defendants.

*Lygo* v. *Newbold*, 9 Excheq. 302. Plaintiff, without defendant's authority, but by permission of defendant's servant, rode in a cart, with her goods, which defendant had contracted to carry for her. Upon suit for personal injury occasioned by the cart's breaking down, *Held*, that the defendant was not liable for that injury, the plaintiff not being rightfully in the cart.

This case is cited as authority, in the case of *Lucas* v. *Taunton & N. B. Railroad Company*, 6 Gray, 70.

2 Redfield, 114, 3d ed. " Where an agent of a railway company assumed to make a contract, in relation to the business of the company beyond the line of his ordinary employment, and especially when it is in contravention of the common course of the business

of the company, or of their published rules and regulations, it will not bind the company."

Cites *Elkins* v. *Boston & Maine Railroad Co.*, 3 Foster, N. H. 275, which was a case of goods promised by agent, to be sent by passenger train, and lost.

The present case is the converse,—passenger going by goods train.

And stronger, in the circumstance that plaintiff entered the freight train without previous permission from any one, the conductor not knowing it until after the train had started. The conductor was not under obligation to stop the train to put him off, and had a justification, in a qualified sense, for taking plaintiff's money for the distance he was to go,—it not appearing that this freight train had any nearer, regular stopping-place. Under such circumstances, the plaintiff must be held, notwithstanding the payment, as taking upon himself the consequences of his unlawful act.

*Robertson* v. *N. Y. & E. R. R. Co.*, 22 Barb. 91, was a case of a person riding on an engine, with consent of the driver, but against regulations; *Held*, that the consent of the driver gave no legal right; *Held*, also (as might have been insisted on, in the case at bar), that the *onus* of showing the driver's authority was on the plaintiff,—" the presumption being, that plaintiff had no right to ride on the engine, whether he paid fare. or not."

*C. C. & C. R.* v. *Bertram*, 11 Ohio, 457, cited in 2 Redfield, 219, was a case where regulations existed permitting passengers to go upon certain freight trains, under prescribed conditions; *Held*, that payment of fare to the office agent, or procuring a ticket before entering the train, was not an unreasonable condition.

*Held*, also, " that an offer to pay fare to an employee on the train not authorized to receive it, is not an offer to the company, and does not entitle the party to a place on such train as a passenger."

II. That part of the requested instruction, which was given by the court below, fully concedes the legal right of the defendant to exclude passengers from its freight trains, and to adopt regulations for that purpose.

The proof clearly establishes that the defendant had adopted and published such a regulation.

The inconsistency between the instruction as first given, and those which follow, is obvious.

The whole amounts to this,—that a railway company may lawfully establish a regulation excluding passengers from its freight trains, but that conductors of such trains may break these regulations at their pleasure.

The payment of money makes no difference, for this is one of the principal mischiefs to be guarded against,—and testimony, drawn out on the plaintiff's side, shows the necessity of such a guard. Other reasons are obvious,—such as the exposure of merchandise, if passengers are allowed to go on freight trains, at their own choice, even with consent of conductors.

The case finds that this company, having in view both its own protection and the accommodation of the public, had adopted, as a part of this very regulation, on this portion of its line, an arrangement for an increased number of passenger trains, and an important reduction of fares.

General disregard of the regulation would tend to an abrogation of these facilities. The plaintiff was, therefore, doing a wrong, not only against the company, but against the public.

It is immaterial whether the plaintiff knew of the regulation or not. It was lawful and reasonable, and he was bound by it.

*T. H. Haskell,* for the plaintiff.

APPLETON, C. J. The defendants are common carriers of passengers and freight. They may carry freight in their passenger train, or passengers on their freight train. They have a right to make all reasonable rules and regulations in the management of their business, with which those in their employ, or those making use of their means of conveyance, are bound to conform when informed of their existence.

By one of the regulations of the defendant corporation, after May 23, 1866, passengers were not " allowed to travel by freight

trains on that part of the line between Portland and South Paris."
The regulation was a reasonable one, and the defendants were
authorized to make it. It is, however, fairly inferable from the
regulation itself that previously passengers had been permitted to
travel by the freight train. By the notice of Sept. 8, 1868, dated
at Montreal, no passengers were to be carried in the brake vans
attached to freight trains " without written authority from the
superintendent." And " any conductor allowing a passenger to
travel on the brake van, or any part of the freight train, will be
dismissed."

The plaintiff went aboard the freight train, in the saloon-car,
and was there with the knowledge of the conductor. It was the
duty of the conductor to inform him of this regulation, if it was to
be enforced, and request him to leave. If no notice was given of
this rule, and no request to leave, but instead thereof the usual fare
was received, he had a right to suppose himself rightfully on board,
and entitled to all the rights of a passenger. Every one riding in
a railroad car is, *prima facie*, presumed to be there lawfully as a pas-
senger, having paid or being liable, when called on, to pay his fare,
and the *onus* is upon the carrier to prove affirmatively that he was
a trespasser. *Penn. R. R. Co.* v. *Books*, 57 Penn. 346. If not
being rightfully on board, and being advised thereof, the plaintiff
neglected or refused to leave, the conductor had a right to remove
him, using no more force than was necessary to accomplish that
object. *Fulton* v. *G. T. Railway*, 17 Up. Can. 428; *Hilliard* v.
*Goold*, 34 N. H. 230; *State* v. *Goold*, 53 Maine, 279.

The regulations of the defendant corporation are binding on its
servants. Passengers are not presumed to know them. Their
knowledge must be affirmatively proved. If the servants of the
corporation, who are bound to know its regulations, neglect or vio-
late them, the principal should bear the loss or injury arising from
such neglect or violation, rather than strangers. The corporation
selects and appoints its servants, and it should be responsible for
their conduct while in its employ. It alone has the right and the
power of removal.

A passenger goes on board a freight train, enters the saloon-car, and remains there when the train starts, against the rules of the company, but with the knowledge of the conductor, and is not directed or requested to leave, but pays the usual fare of a first-class passenger to such conductor, and is injured on his passage by the negligence or carelessness of the railroad corporation. Is he entitled to compensation for such injury? If inert matter be injured or destroyed by the negligence or carelessness of a common carrier, its owner can maintain an action, and recover damages as a recompense for such injury. Is the traveler entitled to the protection of the law, when the negligence of the carrier destroys his goods, and without its protection, when the same negligence injures his health or breaks his limbs? If any extraordinary danger arises from the violation of the known rules of the company, as by standing on the cars when in motion, the passenger violating the rules assumes the special risks resulting from such violation. But if the act of the passenger in no way conduces to the injury received, the carrier must be held responsible for the necessary consequences of his negligence or want of care. *Baker* v. *Portland.*

In *Zump* v. *W. & M. R. R. Co.*, 9 Rich. (S. C.), 84, there were two cars on the train, and the plaintiff's seat was in the forward car. Near the door on the inward car was a notice that passengers should not stand on the platform. The train was running over an unfinished part of the road. The cross ties were too far apart, and were insufficiently spiked, and the accident arose from "the breaking of the cleat at the end of one of the rails." All the other passengers were inside the cars, and none of them injured. The defense was that the injury arose from the plaintiff's own fault in standing upon the platform while the cars were in motion. The verdict was for the plaintiff, which the court refused to set aside, holding that whether the plaintiff had notice that the platform was a prohibited place, and if so, then whether under the circumstances his own act so contributed to the injury as to exonerate the railroad, who were guilty of negligence, were for the jury. The plaintiff's seat, "it will be recollected," observes O'Neale, J., "was in the

forward car; the notice proved was in the rear car, on the platform, on which he was standing when the accident occurred. That such notice is not enough to change the liability of the company to a passenger, is, I think, clear from Story on Bailment, § 558. If the conductor had said to the plaintiff, as was his duty, 'you are in an improper place,' and he had then persisted in remaining, it might have been that this would have excused the company from any consequences which might have followed." An action was brought against a railroad company by a passenger, while traveling in one of its gravel trains. The defendant asked the court to instruct the jury that a railroad company was not liable for an injury which might happen to one taking passage in a gravel train, and not engaged in carrying passengers. This requested instruction was held to be properly denied in *Lawrenceburgh & Up. Miss. R. R. Co.* v. *Montgomery*, 7 Porter (Ind.), 475, the court holding that in a suit brought against a railroad for an injury occasioned by a collision, it was not sufficient for the company to show that the plaintiff was acting at the time in disobedience of a proper order to secure his safety, but that it should also appear that the injury was occasioned by such disobedience. In *Watson* v. *Northern Railway Co.*, 24 Up. Can. (Queen's Bench), 98, the plaintiff traveling in the defendants' train on a passenger ticket, went into the express company's compartment of a car. While there, owing to the negligence of the defendants' servants, the train, which was stationary, was run into by another coming up behind it, and the plaintiff's arm was broken. No person in the passenger cars was seriously injured. It was proved that notice that the passengers were not allowed to ride in the baggage car was usually posted upon the inside of the door of the passenger cars, but it was not distinctly shown that it was there on that day. The jury found that the plaintiff was wrongfully in the car, but that he was not told where to go when he bought his ticket, nor did the conductor order him out, and so he was not to blame. "In my opinion," observes Draper, C. J., "the jury were warranted in finding that the plaintiff did not so contribute (to the injury) as to deprive him of the

right to recover.   Giving the fullest weight to the considerations urged in the defense,—such as the ticket which the plaintiff had, the notices stated to have been kept up in the cars, conceding the plaintiff saw them, though it is not proved,—I do not think they preclude the plaintiff from recovering, when the injury he sustained was occasioned by collision resulting entirely and directly from the gross negligence of the defendants' servants." In *O'Donnel* v. *Alleghany Valley R. R. Co.*, 59 Penn. 239, in a suit by an employee of a railroad company, who held the relation of a passenger, the court charged that the baggage car is an improper place for a passenger to ride,—whether the rule against it was communicated to him or not, if he left his seat in a passenger car and went into the baggage car, it was negligence which nothing less than a direction or an invitation of the conductor could excuse,—and such invitation should not be inferred from his having ridden there frequently with the knowledge of the conductor without his objection; *Held*, to be error.

That a railroad corporation cannot repudiate the acts of its agents so as to free themselves from responsibility, for their negligence, was held in the *Lackawanna & Bloomsburgh R. R. Co.* v. *Chesewith*, 52 Penn. 383, when the agents of a railroad company, contrary to the instructions and rules of the company, at the request of the owner of a freight car, attached it to a passenger car, the plaintiff agreeing to run all risks, the plaintiff having sustained a loss by the negligence of the defendant, brought his action for compensation.   The same defense was attempted as in the case at bar.   The plaintiff was not a trespasser, " for," observes Thompson, J., " he was there by permission, and under the contract of parties competent to give him authority to be there. . . . When, therefore, they (the defendants) consented to hitch on his (plaintiff's) car to the passenger train, even at his urgent solicitation, and we have not a particle of evidence that other inducements to do the act were held out, excepting freedom from responsibility as a consequence of the attachment, we must presume it was done with a view to the compensation to be paid on the one hand, and the usual

care to be exercised on the other. The argument, however, is, that the plaintiff was guilty of such a wrong in asking for permitting his car to be attached, that whether the act contributed to the disaster or not, he is to be treated as a trespasser, and not entitled to any compensation for injuries not willfully done. We think this is not the law, unless in a case when the will of an agent is controlled and subverted by improper influences, he is induced to do that which is manifestly beyond the scope of his powers. That there was a regulation against running freight trains with passenger cars may be admitted, although it was not properly proved, yet that neither proved that it might not be safely done, nor that if the company undertook to do it, they might lay aside the duty of care, and commit such cases to the guardianship of chance."

When a railroad company admits passengers into a caboose car attached to a freight train, to be transported as passengers, and takes the customary fare for the same, it incurs the same liability for the safety of the passengers as though they were in the regular passenger coaches at the time of the occurrence of the injury. *Edgerton* v. *N. Y. & H. R. R. Co.*, 39 N. Y. (12 Tiffany), 227. In *Carrol* v. *N. Y. & N. H. R. R. Co.*, 1 Duer, 578, the plaintiff, remarks Bosworth, J., " took a seat in the post-office apartment of the baggage car. The position was injudiciously chosen, and may be assumed to have been known to him to have been a far more dangerous one than a seat in a passenger car. He took it with the assent of the conductor. He was not there as a trespasser, or wrongfully as between him and the defendants. So far as all questions involved in the decision of this action are concerned, he was lawfully there." His being there was not such negligence as would exonerate the defendants from the consequences of their negligence or want of care.

The plaintiff was not entitled by law to be carried on the freight train contrary to the regulations of the defendant company. They might have refused to carry him, and have used force to remove him from the train. Not doing this, nor even requesting him to leave, but suffering him to remain, and receiving from him the ordi-

nary fare, they must be held justly responsible for negligence or want of care in his transportation.

The question before the court was whether the defendants were liable at all as common carriers. The defense was based entirely upon a regulation of the company. There was no question raised as to the general obligations of carriers. Indeed none is raised at the argument. The counsel for defendants rest their defense on the rules of the company. The plaintiff had paid the usual fare of a first-class passenger. The defendants had received it, and had undertaken the transportation of the plaintiff in their freight train, during the course of which he was injured by their neglect or want of care. Under such circumstances, the judge said that they could not "plead their regulation in release of their ordinary liabilities, but they were just as liable as if it had been a passenger train, and as if there had been no notice, provided plaintiff was not guilty of any fault or want of ordinary care himself."

Undoubtedly a passenger taking a freight train takes it with the increased risks and diminution of comfort incident thereto, and if it is managed with the care requisite for such trains, it is all those who embark in it have a right to demand. The *Chicago B. & Q. R. R. Co.* v. *Hazzard*, 26 Ill. 373. "We have said in the *Chicago & Galena R. R. Co.* v. *Fay*, 16 Ill. 568," observes Breeze, J., "that a passenger takes all the risks incident to the mode of travel, and the character of the means of conveyance which he selects, the party furnishing the conveyance being only required to adapt the proper care, vigilance, and skill to that particular means, for this, and this only, was the defendant responsible. The passengers can only expect such security as the mode of conveyance affords."

If there was any peculiar risk incident to transportation on a freight train, the counsel should have called the attention of the court to such special difference, whatever it may be. But "the responsibility of a railroad company for the safety of its passengers does not depend on the kind of cars in which they are carried, or on the fact of payment of fare by the passenger." *Ohio & Miss. R. R. Co.* v. *Mahling*, 30 Ill. 9. "The evidence," says Walker,

J., in that case; " shows that the road had been carrying passengers on their construction trains, and they must be held to the same degree of diligence with that character of train, as with their regular passenger coaches, for the safety of the persons and lives of their passengers."

If the defendants claimed that they might exercise a diminished degree of caution arising from the character of the train, they should have requested a corresponding instruction.

The cases to which our attention has been called, so far as we have been enabled to examine them, are inapplicable. In *Lygo* v. *Newbold*, 9 Excheq. 302, the plaintiff contracted with the defendant to carry certain goods for her in his cart. The defendant sent his servant with his cart, and the plaintiff, by the permission of the servant, but without the defendant's authority, rode in the cart with her. On the way the cart broke, and the plaintiff was thrown out and injured. *Held*, that as the defendant had not contracted to carry plaintiff, and as she had ridden in the cart without his authority, he was not liable for the personal injury she had sustained. But in that case, it does not appear that the defendant was a common carrier,—that he undertook to carry or received, or was to receive any compensation for the carriage of the plaintiff. In *Lucas* v. *New Bedford & Taunton R. R. Co.*, 6 Gray, 65, it was held that a person who enters the cars of a railroad corporation, not as a passenger, but for the purpose of assisting an aged and infirm relative to take a seat as a passenger, must, in order to maintain an action against the corporation for an injury sustained while leaving the cars, show that he exercised due care, that the corporation was wanting in ordinary care, and that such negligence was the cause of the injury; and if he attempts to leave the cars after they have started, or finding them in motion as he is going out, persists in making progress to get out, he cannot maintain such action, if his attempt causes or contributes to the injury, even if the corporation give him no special notice of the time of departure of the cars, and are guilty of negligence in starting the cars, and in a jerk occurring after the first start, which negligence also contributes to

the injury. But in that case the plaintiff was not a passenger; he was not there for the purpose of being transported. The servants of the corporation could not know, and were not obliged to know the purpose for which he came aboard. Besides, the plaintiff must show due care. The implication from the case is, that with due care on the part of the plaintiff, and negligence on that of the corporation, the action was maintainable, and is adverse to the defendants.                              *Exceptions overruled.*

KENT, DICKERSON, BARROWS, and TAPLEY, JJ., concurred.