## Pennsylvania Railroad Co. *versus* Langdon.

| 92 | 21 |
| 163 | 407 |

1. The right of a railroad company to make reasonable rules for its own protection and for the safety and convenience of passengers has been frequently recognised.

2. A passenger who voluntarily leaves his proper place in the passenger-car of a railroad, in violation of the rules of the company, to ride in the baggage-car, or other known place of danger, and is injured in consequence of such violation cannot recover damages therefor.

3. *It seems,* this would not apply to an accident the result of a brief visit to the baggage-car to give some needed directions about a passenger's baggage, to have it re-checked, or for any other legitimate purpose, but to a person who rides in a baggage-car in violation of a known rule of the company, and who is injured in consequence of such violation.

4. Where the rule of a company is intended for the safety of the passengers the company will be relieved from responsibility if it be shown that an injury was received in consequence of a violation of the rule, and this notwithstanding the fact the negligence of the company's servant was the cause of the accident.

5. A conductor of a railroad train cannot, in violation of a known rule of the company, license a man to occupy a place of danger so as to make the company responsible.

6. A conductor cannot waive a rule which by its very terms he is commanded to enforce. He may neglect to enforce it, and where the rule is a mere police arrangement of the company, such request may perhaps amount to a waiver as between the passenger and the company. But when the rule is for the protection of human life the case is very different. O'Donnell *v.* Allegheny Valley Railroad Co., 9 P. F. Smith 239, and Creed *v.* Pennsylvania Railroad Co., 5 Norris 139, distinguished.

7. The provisions of the Act of April 4th 1868, limiting the amount to be recovered in case of death to $5000, were accepted by a railroad company on April 15th 1868, by a formal resolution of their board of directors. *Held,* that the act thereby became a part of the charter of the company, and the clause in the constitution of 1874, repealing all laws limiting the amount to be recovered in such cases, was inoperative as to said railroad company: Hays *v.* Commonwealth, 1 Norris 518, followed.

November 4th 1879.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ.    STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1879, No. 37.

Case by Mary A. Langdon, widow of Stephen Langdon, Albert Smith and Anna Maria Smith, his wife, in right of said wife and Mary Emma Langdon, a minor, by her mother and next friend, Mary A. Langdon, against the Pennsylvania Railroad Company, operating the Western Pennsylvania Railroad, to recover damages for the death of Stephen Langdon, which it was alleged was caused by the negligence of defendant.

Langdon was killed on the evening of July 23d 1877, by a collision of trains on the Western Pennsylvania Railroad, on one of which he was a passenger. For some days previous a mob had taken possession of the property of the Pennsylvania Railroad

[Pennsylvania Railroad Co. *v.* Langdon.]

Company, in the city of Pittsburgh, had burnt the Union depot, the cars, shops and locomotives of the company, and so effectually destroyed the tracks that no passenger trains could be run.    On Monday evening, July 23d, it was determined to attempt moving a passenger train eastwardly on the Western Pennsylvania Railroad, a branch line of the Pennsylvania Railroad Company, having a connection with the main line at Blairsville intersection, and its terminus on Federal street, Allegheny City.    The train proceeded. in safety from that point to Sharpsburg, a distance of five miles from the city, the end of the double track, and stopped, the conductor going to the telegraph office of the company for orders as to the running of his train.    He quickly returned from it, and started the train, wholly misunderstanding the order.    The train should have waited at Sharpsburg until the mail train west passed it.    After going about two miles it collided with that train, and by this accident Langdon, who was on the mail train, was so much injured that he died in a few hours.

It was an undisputed fact in the case that he was in the baggage-car at the time of the accident.    His train had stopped at Claremont station, and he then got on it, going at once into the baggage-car.    He was engaged in conversation with Mr. Luther, the baggage-master, from that station until the train collided, a very brief period of time, for the distance was but short.    He was an employee of the Pennsylvania Railroad Company, not at work on the Western Pennsylvania Railroad, but on the main line.    Langdon lived near Claremont, and had daily gone up and down the road, riding on a commutation ticket, such as was ordinarily sold to passengers.    He was a passenger, and one with knowledge of the rules of the company, such as no ordinary traveller had.    He was in the baggage-car, contrary to a printed notice posted in it, forbidding any passenger riding therein.    The following is a copy of the notice, which was given in evidence:

## "PENNSYLVANIA RAILROAD CO.

### " Pennsylvania Railroad Division.

#### "notice to passengers.

" The following is an extract from the Book of Rules governing the employees of the Pennsylvania Railroad Company:

" Rule 166.—' They (the Trainmen) must see that passengers are properly seated, and will not allow them to stand on the platforms of the cars, nor ride in the baggage or mail cars.'

" Conductors and Brakemen are instructed to strictly enforce this rule, and it is expected that passengers will cheerfully comply, as the rule is one intended for their own safety, it being particularly dangerous for passengers to be on platforms as trains approach Stations.

"G. Clinton Gardner,
"General Superintendent.

" General Superintendent's Office, ⎫
  " Altoona, Dec. 12, 1876." ⎭

[Pennsylvania Railroad Co. *v.* Langdon.]

Had deceased gone into the smoking-car, or any of the other cars of the train, it appeared no harm would have befallen him. The evidence was uncontradicted that no passenger in either of them was injured, for only the platform of the smoking-car, which was next to the baggage-car, was broken, and neither it nor any car behind it was even thrown from the track. Shortly after the collision Langdon stated he was in the baggage-car at the time of the accident, and that if he had not been in it he would not have been injured.

The plaintiffs having shown the manner of Langdon's death, his age, occupation and habits, closed their case. The defendants set up as ground of defence that he was in the baggage-car, in violation of the rules of the company and with positive knowledge as a railroad employee, that he had gone into a forbidden place, and was there at his peril. And that by his unlawful act he had been the occasion of his death and guilty of such contributory negligence as would defeat the plaintiffs. After the defendants had closed their case, evidence was offered and received on part of the plaintiffs tending to show that Langdon was in said car with the implied assent of the conductor of the train, there being no allegation that any express consent or permission had ever been given by him to Langdon to ride in that car.

At the trial, before Stowe, P. J., the defendant submitted, inter alia, the following points, to which are subjoined the answers of the court:

1. If the jury believe from the evidence that some months prior to the collision, notices were placed in the passenger and baggage-cars of the mail train forbidding passengers to ride in the baggage-car, the act of Stephen Langdon, deceased, in being in said car at said time was illegal, and the plaintiff cannot recover, even though there was a permission, express or implied, on the part of the conductor for him to be there.

Ans. "Refused." (First assignment of error.)

2. If the court should decline to affirm the foregoing point, then they are requested to charge the jury that there is no sufficient evidence to warrant the jury in finding that any permission, express or implied, on the part of the conductor of the mail train, existed, whereby said Langdon was lawfully in the baggage-car on the day of the collision, and by reason thereof the plaintiffs cannot recover.

Ans. "Refused." (Second assignment.)

6. That the jury are not at liberty to find such implied permission existed, unless the evidence satisfies them that said Langdon did so frequently and notoriously ride in said baggage-car as reasonably to induce the belief that the conductor knew he did so, and that unless the jury are satisfied that such was the fact plaintiffs cannot recover.

[Pennsylvania Railroad Co. *v.* Langdon.]

Ans. "Affirmed. With the qualification, that if you believe that the conductor actually knew from his own observation that he had done so before and made no objection thereto, or knew from personal observation that he was in that car the day of the collision previous to the accident sufficiently long before the collision to enable him, without neglecting his other pressing duties, to request him to leave and did not do so, this may be sufficient evidence of implied assent." (Third assignment.)

7. That if the jury believe from the evidence that said Langdon was not in the habit of riding in said baggage-car, but on several occasions, while on the train, may have left his seat in one of the passenger-cars and gone into the baggage-car for a special purpose, without remaining therein but for a short time, and then returned to the car he had left, such acts would not justify the jury in finding that he had an implied permission from the conductor to ride in the baggage-car, and if the evidence shows no greater permission than that, plaintiffs cannot recover.

Ans. "Affirmed, but if the conductor knew that deceased did as stated in this point, and that he did so to converse with Luther, the baggage-master, or for other purposes of his own, remaining there as indicated by plaintiff's evidence, this would be evidence from which the jury may infer consent of the conductor to his being there which would be sufficient to justify a verdict for plaintiffs so far as this question is concerned." (Fourth assignment.)

8. That in no event can there be any recovery greater than the sum of $5000, because of the acceptance of the Act of April 4th 1868, by the Pennsylvania Railroad Company, as shown by the certified copy of the resolution of said company given in evidence.

Ans. "Refused. This question can be raised by motion in arrest of judgment, if the verdict should render it necessary." (Fifth assignment.)

The benefit of the Act of April 4th 1868 (Pamph. L. 1868, p. 59), was claimed to limit the amount of recovery to $5000, because the act had been accepted by the Pennsylvaiña Railroad Company by a resolution of its board, a certified copy of which was given in evidence. Forming thus a part of the charter of the company, it was contended the clause in the new constitution, repealing all laws limiting the amount to be recovered in a case like this, was inoperative and void.

Verdict for the plaintiffs for $5712.50, and, after judgment, defendants took this writ, and alleged that the court erred, inter alia, as set forth in the above assignments.

*Hampton* and *Dalzell,* for plaintiff in error.—Langdon was an employee of the road. He daily travelled over it. The notice

[Pennsylvania Railroad Co. v. Langdon.]

forbidding persons riding in the baggage-car was posted in the passenger and baggage-cars. Langdon must have known this rule, as well from the notice as from his employment. He likewise declared he would not have been hurt if he had not been in the baggage-car. The notice required the trainmen to enforce an observance of this rule, and the conductor could not give his assent to his riding in that car. The conductor could not bind the company by assenting to Langdon being in the car, either by express permission or an implied one coming from having seen him on several occasions in it. Railroad companies have the right to make reasonable regulations for the transaction of their business. This case differs from O'Donnell v. Allegheny Valley Railroad Company, 9 P. F. Smith 239, for in that case the plaintiff, with others, had been for some time daily riding on the baggage-car. As between Langdon and the conductor there could be no waiver of the rule. Langdon was in the baggage-car simply to engage in conversation with the baggage-agent, not for any purpose of his employment or for want of room. There was no evidence that Langdon or any other persons were in the habit of travelling in the baggage-car. That he was in it at long intervals does not show an implied assent to ride there when he pleased. If the court exacts of a company strict compliance with its rules, a passenger must, in good faith, observe the rules made for his safety. To charge the conductor with the knowledge of acts amounting to an implied assent, it must be shown that such acts were customary and of such frequent occurrence, that the rule was abrogated by his assent to these acts.

There can be no recovery to exceed $5000 in any case for damages for injuries resulting in death, if the Act of April 4th 1868, Purd. Dig. 1094, is still in force. It is claimed that it has been repealed by sect. 21, art. 3, of the new constitution.

But so far as the Pennsylvania Railroad Company is concerned, we deny the power either of the constitutional convention or the legislature to repeal the Act of 1868. It was provided in that act as follows (sect. 4.) : "And upon the acceptance of the provisions hereof, by any carrier or corporation, the same shall become a part of its act of incorporation."

The Pennsylvania Railroad Company accepted said act, as appeared by the certificate offered in evidence. The Act of Assembly of 1868 thus became a part of the company's charter. To all intents and purposes the company had the same right under it as if it had been written in the body of its original charter. Had it been there it can hardly be contended that there exists any power to eradicate it against the consent of the corporation. This court has declared " that charters of private corporations are left exactly as the new constitution found them, and so must remain until the companies holding them shall enter into a new contract with the

state, by accepting the benefit of some future legislation." Hays et al. *v.* Commonwealth, 1 Norris 518.

*Barton & Sons*, for defendants in error.—Langdon was not an employee of the Western Pennsylvania Railroad, he was simply an ordinary passenger. The question is not what knowledge either he or the conductor had, but did the conductor assent, either expressly or impliedly to his non-observance of the rules: O'Donnell *v.* The Allegheny Valley Railroad, *supra; * Creed *v.* Pennsylvania Railroad Co., 5 Norris 139.

It appeared the conductor knew Langdon occasionally rode in the baggage-car, and that he never forbade him to do so ; that he saw him get on the train the day of the accident, knew he was on the train, and that he was not in any of the *other* coaches; that he did not go to him to punch his ticket, because he had already punched it for the down trip when he came up in the morning ; that he was through with his active duties, and was sitting in the second car—plenty of time, if Langdon was not where he ought to be, to have gone to him and directed him to his seat. Take all these facts together, and have we not abundant evidence of the consent and assent of this conductor to his being exactly where was?

Can it be the law that because a passenger violates some rule of the company by stopping on a platform to speak to an acquaintance, or by going into the baggage-car to talk to an employee, and that while so doing he is suddenly deprived of his life by the gross carelessness and *criminal* negligence, shown in this case, of the officers of the road, that he forfeits all compensation, and they are relieved from liability for their acts?

Mr. Justice PAXSON delivered the opinion of the court, January 5th 1880.

There are certain facts in this case which are not disputed. Stephen Langdon, the deceased, to recover damages for whose death this action was brought, was an employee of the company defendant, but was not engaged upon the Western Pennsylvania Railroad when the accident occurred. His position was that of night inspector of locomotives at the outer depot of the Pennsylvania Railroad, in the city of Pittsburgh. The depot had been burned by the rioters the day before the accident occurred. He lived upon the line of the Western Pennsylvania Railroad, a few miles out of the city, and was in the habit of riding to and from his home daily on said road. He travelled upon a commutation ticket, such as is usually sold to passengers. At the time of the accident, he was riding in the baggage-car, in violation of the rules of the company. Said rules were conspicuously posted in the baggage-car. The particular rule in question is as follows : "They (the

trainmen) must see that passengers are properly seated, and will not allow them to stand on the platforms of the cars, nor ride in the baggage nor mail-cars. Conductors and brakemen are instructed to strictly enforce this rule, and it is expected that passengers will cheerfully comply, as the rule is one intended for their own safety, it being particularly dangerous for passengers to be on platforms as trains approach stations." Whilst Langdon was sitting in the baggage-car, and after the train had left Sharpsburg, it collided with the mail-train, injuring him so severely that his death occurred within a few hours thereafter. Had he been in the smoking-car, or in any of the passenger-cars he would not have been injured. After the accident he stated to some of the witnesses, that if he had not gone into the baggage-car he would not have been hurt.

The right of a railroad company to make reasonable rules for its own protection, and for the safety and convenience of passengers, has been repeatedly recognised. Sullivan v. Phila. Railroad Co., 6 Casey 234; Powell v. Pennsylvania Railroad Co., 3 Id. 414; West Chester & Phila. Railroad Co. v. Miles, 5 P. F. Smith 209; Pitts. & Conn. Railroad Co. v. McClurg, 6 Id. 294; Central Railroad Co. v. Green, 5 Norris 421; O'Donnell v. Allegheny Valley Railroad Co., 9 P. F. Smith 239. Such companies are held, and very properly, to a strict measure of responsibility in cases of injuries to passengers. It is not unreasonable that they should have the right to require passengers to observe such proper regulations, as are essential to their own safety. With all the care such corporations can exercise in the perfection of their road-bed and machinery, and in the selection of their servants, accidents involving injuries and loss of life, will frequently occur. This must continue to be the case so long as iron and wood are destructible, and dependence is placed upon the fidelity, the vigilance, and the judgment of servants. A misplaced switch or an inaccurately worded telegram, may send a train to destruction. In such and other like cases, the company is liable to the party injured. The practical impossibility of avoiding all accidents by rail furnishes no good reason why such corporations shall not respond in damages for the injuries caused by the negligence of their servants, when and so often as the same occurs. Such being the measure of their responsibility, may they protect themselves so far as to require passengers to conform to reasonable rules intended to lessen the chances of their being injured? We know of no well-considered case which holds that they may not do so, nor has any sufficient reason been shown why they should not. In doing so, they at least seek to guard the lives of their passengers.

The baggage-car is a known place of danger. In this respect it differs from the cow-catcher and the platform only in degree. It is placed ahead of the passenger-cars and next to or near the locomotive. In cases of collision, it is the first car to give way to the

[Pennsylvania Railroad Co. *v.* Langdon.]

shock, and frequently is the only one seriously injured. It is treated as dangerous by the rules of all well-regulated companies, and the rule of the defendant company emphatically declared it to be so. An infant or an idiot might be excused for riding in such a position, by reason of his lack of mental capacity, but an intelligent man, accustomed to railroad travel, must be presumed to know its danger. It is patent and the same under all circumstances.

Can a passenger who voluntarily leaves his proper place in the passenger-car, in violation of the rules of the company, to ride in the baggage-car, or other known place of danger, and who is injured in consequence of such violation, recover damages for such injury? We are not speaking of a possible accident, the result of a brief visit to the baggage-car to give some needed direction about a passenger's luggage, to have it re-checked, or for any other legitimate purpose, but of a person who rides in a baggage-car in violation of a known rule of the company, and who is injured in consequence of such violation.

In considering this question, regard must be had to the character of the rule violated. The rules adopted by railroad companies are a part of their police arrangements. Some of them are for the convenience of the company in the management of its business. Others are for the comfort of passengers, and yet others have regard exclusively to the safety of passengers. The distinction between them, and the difference in the consequences of their violation is manifest. As an illustration: it would be unreasonable to hold that the violation of the rule against smoking, could be set up as a defence to an action for personal injuries resulting from the negligence of the company. On the other hand, should a passenger insist upon riding upon the cow-catcher, in the face of a rule prohibiting it, and as a consequence should be injured, I apprehend it would be a good defence to an action against the company, even though the negligence of the latter's servants was the cause of the collision or other accident, by which the injury was occasioned. And if the passenger thus recklessly exposing his life to possible accidents were a sane man, more especially if he were a railroad man, it is difficult to see how the knowledge or even the assent of the conductor to his occupying such a position could affect the case. There can be no license to commit suicide. It is true the conductor has the control of the train and may assign passengers their seats. But he may not assign a passenger to a seat on the cow-catcher, a position on the platform, or in the baggage-car. This is known to every intelligent man and appears upon the face of the rule itself. He is expressly required to enforce it, and to prohibit any of the acts referred to, unless it be riding upon the cow-catcher, which is so manifestly dangerous and improper, that it has not been deemed necessary to prohibit it. We are unable to see how a conductor, in violation of a known rule of the company, can license a man to

occupy a place of danger so as to make the company responsible. It is otherwise as to rules which are intended merely for the convenience of the company or its passengers. It was said by Woodward, J., in Sullivan v. The Railroad Co., *supra*, that "on the part of the passenger, his assent is implied to all the company's reasonable rules and regulations for entering, occupying and leaving their cars; and if injury befall him by reason of his disregard of regulations, which are necessary to the conduct of the business of the company, the company are not liable in damages, even though the negligence of their servants concurred with his own negligence in causing the mischief." This principle is even broader than the one we are now contending for. We only assert here, that if a passenger wilfully violates a known rule intended for his safety, and is injured in consequence of such violation, he is not entitled to recover damages for such injury.

We are not aware that the foregoing views conflict with any of our own cases. They may not harmonize with some of the dicta which lie scattered through them, but a careful examination of the points decided shows no serious embarrassment. In O'Donnell v. The Allegheny Railroad Company, 9 P. F. Smith 239, one of the cases relied upon to sustain the contrary view, the court below instructed the jury, as we gather from the opinion of Agnew, J.: "Summing up the doctrine of the court as found in the charged answers to the points, it was this: That the baggage-car is an improper place for a passenger, and whether the rule of the company forbidding him to be there is made known to him or not, his own intelligence should teach him that it is not his proper place; that if he leave his seat in the passenger-car to go into the baggage-car, he is guilty of negligence; that nothing less than a direction or an invitation from the conductor to go there will excuse this negligence, and such direction or invitation should not be inferred from the mere fact that he had been accustomed to ride frequently in the baggage-car, with the knowledge of the conductor and without objection. The judge therefore instructed the jury that if the plaintiff left the passenger-car without the direction or invitation of the conductor, he did what no passenger has a right to do, even though he had been accustomed to ride there with the knowledge of the conductor and without objection." It will be noticed that this court did not deny the correctness of this ruling as an abstract proposition. It was merely held that it was not correct as applied to the facts of that case. It was said by the court: "In view of the evidence this instruction was erroneous." What was the evidence? Again I quote from the opinion: "The plaintiff had been riding in the baggage-car for about two months. Murphy, the conductor, himself admitted, that Liston's men rode frequently in the baggage-car without his objecting; that he never ordered them out. When they got on that car, they generally remained there

[Pennsylvania Railroad Co. *v.* Langdon.]

without objection; that he had no recollection of requesting them to go into the passenger-car, and that he had not at any time requested the plaintiff to leave the baggage-car. The reason for this is obvious. These hands, though passengers on the train from the terms of their employment, still retained the outward appearance of employees. They were in their working clothes, which, owing to their employments, were doubtless often soiled and filled with perspiration. They were probably at times not considered travelling companions for those who sat in the passenger-cars, and at times the cars were probably filled. It was not at all unnatural that they themselves should wish, and that the conductor should desire them to travel on the baggage-car out of the immediate presence of the passengers. Under these circumstances it cannot be justly said of them, *as of ordinary passengers,* ' that any one who is possessed of sufficient intelligence to travel should be held to know that the baggage-car is not an appropriate place for passengers,' nor to say, although the consent of the conductor to riding there may be inferred from these facts, yet it does not follow that the company is liable, unless it is shown that they were there at the invitation or by the direction of the conductor.'' And in concluding his opinion the learned judge said : " From the evidence in this case the jury might reasonably conclude that O'Donnell was in the baggage-car with the permission of the conductor, and for the benefit of the company, and was rightfully there at the time of the accident.'' It will be observed that the case was put mainly upon the ground that the plaintiff and his co-employees had been riding in the baggage-car daily for two months under circumstances which would justify the jury in finding that it was an arrangement for the benefit of the company. It may be conceded that if a baggage-car is used as a passenger-car for months, the full measure of responsibility would attach. There is nothing of the kind here. The deceased was riding in the baggage-car for his own convenience, and to have a chat with the baggage-master, with whom he appears to have been intimate. The assent or even the knowledge of the conductor was not shown. The jury were allowed to guess at it by reason of the submission of this question of fact upon clearly insufficient evidence. In Lackawanna and Bloomsburg Railroad Co. *v.* Chenewith, 2 P. F. Smith 382, there was a violation of the rules of the company, but it was a rule that had no relation to the plaintiff's safety as a passenger. He induced some of the company's employees, in the absence of the superintendent, to attach his freight-car to a passenger train, agreeing to run all risks, and to attend to the brakes on his own car. The engine ran over a cow, by means of which the plaintiff was injured. It is manifest the facts of this case have no analogy to that of a passenger who leaves his seat in the cars, and rides in a known place of danger, in violation of the company's rules. The court evidently had this view,

[Pennsylvania Railroad Co. v. Langdon.]

for it was said by Mr. Justice THOMPSON, in delivering the opinion: "If a passenger puts himself out of place, and in a place of danger, and is injured as the result, this is *damnum absque injuria,* and he cannot recover." The recent case of Creed v. The Pennsylvania Railroad Co., 5 Norris 139, also rests upon an entirely different state of facts. There the deceased was riding in the caboose-car at the rear end of the train, in violation of the rules of the company. But it nowhere appeared that the rule violated was intended for the safety of passengers, nor was it even alleged that the caboose-car was a place of danger. On the contrary, it was said, by Mr. Justice GORDON: "No presumption of negligence can arise, either in fact or in law, from the fact of Creed's occupancy of the caboose, for there is no evidence that it was in any degree more unsafe than any other car in the train. It was, indeed, under all ordinary circumstances, the one that was the most safe: from collisions in front of the train it was protected by the cars which preceded it, and from dangers behind, being itself a lookout, it was guarded by the constant vigilance of the employees." The distinction between this case and the one in hand is so palpable that further reference to it is unnecessary.

Our own cases give us no trouble. Nor is there serious difficulty in the authorities outside of this state that have been called to our attention. In Dunn v. The Grand Trunk Railway Company, 58 Me. 187, the plaintiff got on board a freight train in violation of the rules of the company. The conductor did not put him off, nor request him to leave, but accepted his fare as a first-class passenger. It was held, that he was entitled to recover for injuries caused by the negligence of the company's servants. Here, the conductor accepted his fare as a first-class passenger, and permitted him to take his seat in the saloon-car of the freight train. There was no point that it was a place of danger, nor that the rule was intended for the safety of passengers. On the contrary, it was manifestly a mere police regulation in the interests of the company. It was said by Appleton, C. J., in delivering the opinion of the court: "If any extraordinary danger arises from the violation of the known rules of the company, as by standing on the cars when in motion, the passenger violating the rules assumes the special risks resulting from such violation. But if the act of the passenger in no way conduces to the injury received, the carrier must be held responsible for the necessary consequences of his negligence or want of care." Isbell v. New York & New Haven Railroad Company, 27 Conn. 393, was an action brought to recover damages for cattle killed upon the track, and has no application. Keith v. Pinkham, 13 Me. 501, was a case of injury to a passenger by stage. He took a seat on the outside of the coach, there being a vacant seat inside, after being told that if he did so it would be at his own risk. The defendant asked an

[Pennsylvania Railroad Co. *v.* Langdon.]

instruction that if plaintiff had been directed to take an inside seat he could not recover. Appleton, J., said: "If the plaintiff was injured through his or their neglect, he being in the exercise of ordinary and common care in the way of contributing to the injury by his position, he might well maintain this suit. The fact that the plaintiff took his position outside was a circumstance proper for the consideration of the jury in determining whether his negligence contributed in any way to the production of the injury. But the requested instructions took from the jury all inquiries as to the attendant negligence, and they were rightfully withheld." Here, the plaintiff took a seat intended for passengers and usually so occupied. If it was a place of danger, such fact did not appear, and it may be safely said as a general rule, the result of every intelligent man's experience, that an outside seat on a stage-coach cannot be pronounced extra hazardous as a matter of law. It was properly left to the jury. Huelsenkamp *v.* Citizen's Railway Company, 37 Mo. 537, was an injury to a passenger whilst standing on the platform of a city car. No notice was given not to ride there, nor was any rule of the company shown. The question whether it was a position of danger was not raised, and there is little analogy in this respect between a horse-car in a city, and a car propelled by steam. Richmond *v.* Sacramento Valley Railroad Company, 18 Cal. 351, was a case of a passenger who was injured by an accident caused by cattle upon the track. It is not in point. In Washburn *v.* The Nashville & Chattanooga Railroad Company, 3 Head (Tenn.) 638, the plaintiff was injured whilst riding in the baggage-car. In this respect it resembles the case under consideration. But here the analogy ceases. The plaintiff was travelling upon a pass, and the principal question was whether he could recover for that reason. This question was settled by Railroad Company *v.* Derby, 14 How. 468. No point was made in regard to a rule of the company prohibiting the use of the baggage-car for passengers, nor was the fact of its being a place of danger referred to. Carroll *v.* New York & New Haven Railroad Company, 1 Duer 571, was a case decided in the superior court of the city of New York, and much relied upon as sustaining the opposite view. There, as here, the plaintiff was injured whilst in the baggage-car, and would have escaped if he had been in the passenger-car. The court recognised the fact that the baggage-car was a place of danger, but held that, inasmuch as he was there with the knowledge and consent of the conductor, he was there rightfully, and was entitled to recover. But there was no question made of the violation of such a rule as we have here, nor was even the existence of a similar rule shown. In its absence, it may well be that the assent of the conductor gave him the right to be in the baggage-car, and if he was there lawfully, under all the authorities he was entitled to recover. Jacobus *v.* St. Paul &

Chicago Railway Company (Supreme Court of Minnesota), reported in the Legal Intelligencer of August 28th 1874, was also a case of injury to a passenger who was riding in the baggage-car, contrary to the rule of the company. The court said there was a conflict of evidence as to whether the plaintiff had been notified of the rule, but that inasmuch as he was shown to have been there with the knowledge and assent of the conductor, it made no difference. The learned judge who delivered the opinion relied upon Railroad Co. *v.* Chenewith and the line of cases I have just discussed. Whatever there is of confusion upon this question arises from the misapplication of the rule in Railroad Co. *v.* Chenewith and its cognate cases. The difference between a rule for the convenience of the company, and one for the safety of the passenger has been entirely lost sight of. In the former, the company would be liable unless the violation was the cause of the accident producing the injury; in the latter, it is sufficient to relieve the company that the injury was received in consequence of the violation of the rule, and this, notwithstanding the fact that the negligence of the company's servants was the cause of the accident. We do not regard Jacobus *v.* The Railroad Co. as entitled to weight as authority. The reasoning of the court is not satisfactory, and the authorities cited do not sustain the position assumed by the learned judge who delivered the opinion.

I am not aware that it has been decided in any well considered case that a passenger may, as a matter of right, ride in the baggage-car at the risk of the company. In a few cases it has been held that the assent of the conductor is sufficient to charge the latter with the consequences of such act, that it amounts to a waiver of the rule forbidding passengers to ride in the baggage-car. But how can a conductor waive a rule which, by its very terms, he is commanded to enforce? He may neglect to enforce it, and when the rule is a mere police arrangement of the company, such neglect may perhaps amount to a waiver as between the passenger and the company. But when the rule is for the protection of human life the case is very different. We are not disposed to encourage conductors or other railroad officials in violating reasonable rules which are essential to the protection of the travelling public. If it is once understood that a man who rides in a baggage-car in violation of the rules, does so at his own risk, we shall have fewer accidents of this description.

On the other side we have the case of Robertson *v.* The Erie Railroad Co., 22 Barb. 91, in which it was held that, where one rode upon the engine in violation of the known rules of the company, and was there injured, he could not recover, notwithstanding he was there with the assent of the engineer; and our own case of Pittsburgh and Connellsville Railroad Co. *v.* McClurg, 6 P. F. Smith 294, in which it was held that, where a traveller "puts his

11 Norris—3

[Pennsylvania Railroad Co. v. Langdon.]

elbow or his arm out of a car window, voluntarily, without any qualifying circumstances impelling him to do it, it is negligence, *in se ;* and where that is the state of the evidence it is the duty of the court to declare the act negligence in law."

The plaintiffs must be held to a knowledge by Langdon, the deceased, of the rule in question. Aside from the fact that it was conspicuously posted in the baggage-car, it is not disputed that the deceased was an employee of the defendant company ; that he was temporarily out of work, as was alleged, by reason of the burning of the depot is not material. Whilst all his rights as a passenger are conceded, his position was such that he must have been familiar with a rule that is generally known to every intelligent man who travels by rail.

We need not pursue the subject further. We regard the weight of authority as with the principle indicated, and it is sustained by the sounder reason. Under the facts of this case the defendant's 1st, 2d, 6th and 7th points should have been affirmed without qualification.

It was also error to decline the defendants' 8th point (see 5th assignment.) The second section of the Act of 4th April 1868, Pamph. L. 58, limits the amount to be recovered in actions against railroad companies and common carriers for negligence, to $3000 in case of personal injuries, and $5000 in case of death. In Cleveland and Pittsburgh Railroad Co. *v.* Rowan, 16 P. F. Smith 393, the constitutionality of the act was affirmed so far as it limits the liability in case of death, and it was held that " damages for death are exclusively statutory, and are capable of restriction and limitation by the legislature." This principle was recognised by the later case of Pennsylvania Railroad Co. *v.* Keller, 17 P. F. Smith 300. The Act of 1868 has never been repealed by the legislature. It was contended, however, that it had been repealed by sect. 21 of art. 3, of the constitution, which is as follows : " No Act of the General Assembly shall limit the amount to be recovered for injuries resulting in death, or for injuries to person or property ; and in case of death from such injuries, the right of action shall survive, and the General Assembly shall prescribe for whose benefit such actions shall be prosecuted. No act shall prescribe any limitations of time within which suits may be brought against corporations for injuries to persons or property, or for other causes different from those fixed by general laws regulating actions against natural persons, and such acts now existing are avoided." The first portion of this section ends with a period, and is complete in itself. It has no reference to corporations as distinguished from natural persons, and imposes a restriction upon the power of the legislature to limit the amount to be recovered in cases of injuries or death. It speaks for the future only, and avoids no existing acts. The second part of the section prohibits any limitations of

[Pennsylvania Railroad Co. v. Langdon.]

time within which actions for such causes shall be brought against corporations, other than those fixed by general laws, and avoids all such existing acts. That is to say, it avoids all existing laws imposing limitations upon the time of bringing suit, other than those in harmony with general laws. This is the plain reading of the section. The Act of 1868 is not "such" an act. It relates not to the time of bringing suit but to the amount to be recovered. Aside from this the 4th section of the Act of 1868 provides that, "upon the acceptance of the provisions hereof, by any carrier or corporation, the same shall become a part of its act of incorporation." It was in evidence, in the court below, that the defendant company had formally accepted the provisions of the Act of 1868. So that at the time of the adoption of the constitution, the provisions of said act limiting the amount to be recovered in case of death to $5000, was a part of the charter of the company. The effect of the constitution upon charters existing at the time of its passage was before this court in Hays v. Commonwealth, 1 Norris 518. It was there held that sect. 4 of art. 16 of the new constitution, which provides that "In all elections for directors or managers of a corporation, each member or shareholder may cast the whole number of his votes for one candidate, or distribute them upon two or more candidates, as he may prefer," does not apply to a corporation that existed prior to the adoption of the constitution, and has not since accepted the benefits of any legislation under it, and whose charter contained the provision, "that at all general meetings or elections by the stockholders, each share of stock shall entitle the holder thereof to one vote." It was there said : "Charters of private corporations are left exactly as the new constitution found them, and so they must remain until the companies holding them shall enter into a new contract with the state by accepting the benefit of some future legislation." The judgment of the court is so well vindicated in the clear and well-considered opinion of our brother GORDON, that we may well be excused any further discussion of this question. It is conclusive of this branch of the present contention.

For the reasons given we are of opinion that the defendant's eighth point should also have been affirmed.

Judgment reversed.

Mr. Justice TRUNKEY dissented from so much of this opinion as relates to the Act of April 4th 1868, believing the second section of said act is avoided by the 21st section of article 3 of the constitution.