## WATERBURY *v.* NEW YORK C. & H. R. R. Co.

*(Circuit Court, N. D. New York. May 4, 1883.)*

1. **CARRIER OF PASSENGERS—RIDING ON ENGINE OF CATTLE TRAIN—VIOLATION OF ORDERS—QUESTION FOR JURY.**

    Where a drover riding on an engine, in an action for negligence of the railroad company causing an injury to him, claims that he was riding on the engine by the consent of the engineer to look after his cattle, as was customary, and the defendant claims that it was contrary to orders for anybody to ride on an engine, the question to be left to the jury to determine is whether the defendant had, notwithstanding its rules for the government of its employes, by its conduct held out its employes to the plaintiff as authorized under the circumstances to consent to his being carried on the train with his cattle.

2. **SAME—PRESUMPTION—REBUTTAL BY CIRCUMSTANCES.**

    The presumption of law is that persons riding upon trains of a railroad carrier which are palpably not designed for the transportation of persons, are not lawfully there, and if they are permitted to be there by the consent of the carrier's employes, the presumption is against the authority of the employes to bind the carrier by such consent. But such presumption may be overthrown by special circumstances; and where the railroad company would derive a benefit from the presence of drovers upon its cattle trains, and may have allowed its employes in charge of such trains to invite or permit drovers to accompany their cattle, the presumption against a license to the person thus carried may be overthrown.

3. **SAME—DUTY TO CARRY SAFELY—GRATUITIOUS CARRIAGE.**

    The right which a passenger by railway has to be carried safely, does not depend on his having made a contract, but the fact of his being there creates a duty on the part of the company to carry him safely. It suffices to enable him to maintain an action for negligence if he was being carried by the railroad company voluntarily, although gratuitously, and as a mere matter of favor to him.

At Law. Motion for new trial.

*Parker & Countryman*, for plaintiff.

*Hale & Bulkley* and *Frank Loomis*, for defendant.

WALLACE, J. The plaintiff sued for personal injuries sustained, as he alleged, by the negligence of the defendant, and, having recovered a verdict, the defendant moves for a new trial. The plaintiff was riding on an engine of the defendant, when, in consequence of a misplaced switch, it was thrown from the track and he was injured. There was no evidence on the trial of any express contract between the parties creating the relation of passenger and carrier, but it ap-

peared that on various prior occasions the plaintiff and other drovers whose cattle were being transferred from West Albany to East Albany by the defendant, had been permitted by the employes of the defendant to accompany their cattle by the same train,—sometimes on the cars of the cattle train, and sometimes on the engine. At times the trains were delayed between these points and the cattle required attention, and as no employe of the defendant was assigned to the duty of looking after the cattle, it seemed to be assumed between the employes of the defendant and the drovers that the latter should look after their own cattle. Upon the occasion in question the plaintiff and another drover got upon the engine, there being none but box cars on the train. The engineer inquired if they had cattle on the train, and being informed that such was the fact, made no objection to their riding upon the engine. It was shown for the defendant that its rules for the government of its employes forbade them from permitting any person to ride upon the engine.

At the trial it was left to the jury to determine as questions of fact whether the plaintiff was a trespasser or a passenger; whether there was negligence on the part of the defendant; and whether there was contributory negligence on the part of the plaintiff. The jury were instructed in substance that if the plaintiff knew he was riding upon the engine in contravention of the rules of the defendant he was a trespasser, and in that case the defendant was not responsible for the injury. They were also instructed that if they found he was riding upon the engine pursuant to an implied understanding between himself and the defendant that he should accompany his cattle in order to take care of them on the way, he was a passenger; and that if he was a passenger, and entitled to accommodations as such, the defendant was not at liberty to assert that he was guilty of negligence in riding upon the engine, if the defendant had provided no safer place for him to ride.

A careful examination of the evidence shows quite satisfactorily that the case did not justify the assumption in any aspect of it that the plaintiff was entitled to be carried as a passenger, as an implied condition of the contract to carry his cattle. The most that can be fairly claimed for the plaintiff upon the evidence is that he was riding upon the engine permissively. If he was riding there with the consent of the defendant, express or implied, it is not material, so far as it affects the defendant's liability for negligence, whether he was there as a matter of right or a matter of favor,—as a passenger or a mere licensee. It suffices to enable him to maintain an action for negligence if he was being carried by the defendant voluntarily. If the defendant undertook to carry him, although gratuitously, and as a mere matter of favor to himself, it was obligated to exercise due care for his safety in performing the undertaking it had voluntarily assumed. *Philadelphia, etc., R. Co.* v. *Derby,* 14 How. 468; *Steam-boat New World* v. *King,* 16 How. 469. The carrier does not, by consent-

ing to carry a person gratuitously, relieve himself of responsibility for negligence. When the assent to his riding free has been legally and properly given, the person carried is entitled to the same degree of care as if he paid his fare. *Todd* v. *Old Colony, etc., R. Co.* 3 Allen, 18. As is tersely stated by BLACKBURN, J., in *Austin* v. *Great Western Ry. Co.* 15 Weekly Rep. 863, "the right which a passenger by railway has to be carried safely does not depend on his having made a contract, but the fact of his being there creates a duty on the part of the company to carry him safely."

The real question in the case was lost sight of upon the trial. That question was whether the plaintiff was being carried upon the engine with the consent of the defendant, or only by the unauthorized permission or invitation of the defendant's employes. This question was not presented by the exceptions to the charge or by the instructions which the court was asked to give to the jury. But upon the theory on which the case was presented the jury must have found that the plaintiff had a right to be carried by the defendant as an implied condition of the contract for the transportation of his cattle. As the evidence does not warrant such a conclusion, and as the real question in the case has not been passed upon by the jury, there should be a new trial upon the ground of misdirection, although the defendant's exceptions do not reach the error.

It should have been left to the jury to determine, as a question of fact, whether the defendant had by its conduct held out its employes to the plaintiff as authorized, under the circumstances, to consent to his being carried on the train with his cattle. Undoubtedly the presumption of law is that persons riding upon trains of a railroad carrier, which are palpably not designed for the transportation of persons, are not lawfully there; and if they are permitted to be there by the consent of the carrier's employes, the presumption is against the authority of the employes to bind the carrier by such consent.

In *Eaton* v. *D., L. & W. R. Co.* 57 N. Y. 382, it is held that the conductor of a freight train has no authority to consent to the carrying of a person upon a caboose attached to such train, but designed for the accommodation of employes, and in such case the presumption is that the person carried is not lawfully there. On the other hand, this presumption may be overthrown by the special circumstances, as in the case of *Ohio & Miss. R. Co.* v. *Muhling,* 30 Ill. 9, where the plaintiff was riding on a construction train, and in the cases of *Ryan* v. *Cumberland Valley R. Co.* 23 Pa. St. 384, and *Gillshannon* v. *Stony Brook Co.* 10 Cush. 228, where the plaintiff was riding on a gravel train.

So, in a case like the present, where the railroad carrier may derive some benefit from the presence of drovers upon its cattle trains, and may have allowed its employés in charge of such trains to invite or permit drovers to accompany their cattle, the presumption against

v.17,no.9—43

a license to the person thus carried may be overthrown. It should have been left to the jury to determine, as a question of fact, whether, notwithstanding its rules for the government of its employes, the defendant had not held them out to the plaintiff as having authority to consent to his being carried. If it should appear that its employes have been accustomed to allow drovers to accompany their cattle on the cattle trains so generally and constantly that the officers of the company must have known it, the consent of the company may be predicated upon acquiescence and ratification.

A new trial is granted.

---

SCOPE OF THIS NOTE. The foregoing opinion touches upon three questions: (1) The duty of carriers of passengers to persons on their vehicles who have not paid their fare; (2) the liability of such carriers to persons on their vehicles who are injured while riding in a dangerous or improper place; and, as growing out of the second question, (3) whether, and, if at all, under what circumstances, the authorization or assent of the carrier's servants that the person injured should ride in a dangerous and improper place, will excuse such person and shift the risk upon the carrier. I shall not undertake to review all the decisions bearing upon these questions; that would go much beyond any limit of space which could be afforded me; but I shall render a more substantial service to the readers of the FEDERAL REPORTER by presenting in detail the decisions—and they are quite numerous—which have been rendered on these questions since the publication of any text-book or treatise on the subject of carriers,—referring to prior decisions so far as may be convenient.

## I. Extent of Carrier's Duty to Non-Paying Passengers and Trespassers.

§ 1. CARRIER UNDER CERTAIN ABSOLUTE DUTIES TOWARDS HIS PASSENGERS. It must be stated, as necessary to the understanding of what follows, that a carrier of passengers for hire assumes certain absolute duties to them in respect of their safety. Without entering into particulars, or attempting to state the various expressions which are used in defining these duties, it may be said that they come substantially to this: that the carrier is bound to provide himself with, and to use the safest means of transportation which are reasonably consistent with the practical conduct of his business; that he is under a continuing duty of inspection and care, to the end that these means of transportation be kept in safe condition with reference to the uses to which they are put; that he is bound to exercise care that the servants whom he employs to conduct his business are careful and competent; and that in all these respects, and in all other respects relating to the safety of his passengers, he must exercise the highest degree of care which is exercised by very cautious persons in the conduct of their business.[1]

§ 2. CARRIER UNDER THE SAME DUTIES TOWARDS GRATUITOUS PASSENGERS. (1) *General Rule.* In the prosecution of his business, the carrier must generally, if a person, and always, if a corporation, act through the instrumentality of others. Where he is not personally in charge of his vehicle, some one must necessarily be there, to whom is committed the general duty of saying who shall and who shall not ride thereon. This person, in respect of the decision of this question, is the *alter ego* of the carrier. On vessels, this person is the master or captain; on railway trains, the conductor. To a

---

[1] Story, Bailm. § 592 et seq.; Thomp. Carr. Pass. p. 200 et seq.

person who is invited or permitted to ride on the carrier's vehicle without paying fare, either by the carrier himself or by this *alter ego,* the carrier owes the same measure of duty, in respect of carrying him safely, which he owes to passengers who have paid full fare.[1]

(2) *Comments on the Foregoing Rules.* It has been well said that there are no degrees of negligence known to the law, where the subject of the bailment is human life; and where a carrier undertakes to convey passengers by the dangerous agency of steam, any negligence is culpable and may well be deemed gross.[2] The correct principle applicable to such cases is believed to be that " if a man gratuitously undertakes to do a thing to the best of his skill, when his situation or profession is such as to imply skill, the omission of that skill is imputed to him as gross negligence." [3] This must, however, be said with the qualification that the word " gross " in this sense is not used as expressing the antithesis of a certain defined degree of care. It is either used in the sense of *culpable* or *actionable* or else it is a mere epithet.[4]

(3) *Rule not Affected by the Circumstance that the Carrier's Servant Acted against his Orders.* If a servant, charged by his master with a particular employment, does a particular act in the course of such employment, from which damages happen to a third person, the master will be liable to such person, although the servant had no orders to do the particular act, or although, in doing it, he went against the master's express orders, providing the act was of such a nature that the master would be liable if done in conformity with his orders.[5] In conformity with this principle, the simple fact that the servant of a carrier violates his duty to his master and invites a person to ride free, without collusion between him and such person to defraud the carrier, will not operate to deprive the person so riding of an action for damages, if he is injured while so riding through the negligence of the carrier's servant.[6] Thus, if the driver of a street railway car permits a trespassing child to ride on the front platform, and the child is injured through his negligence, an action will lie against the company;[7] and so where the conductor of a railway train allows a person to ride on the train without paying fare.[8]

(4) *Illustrations.* Accordingly, where a *boy* got upon a *freight train* without the knowledge or consent of the conductor, but the conductor, after finding him there, suffered him to remain, it was held that he was entitled to the same protection as if he had been a passenger and had paid his fare.[9] So, although a railroad company may not be a common carrier of passengers by *hand car,* yet if it undertakes, for a purpose connected with its business or otherwise, to transport a person from one point to another on its road by this means of conveyance, it assumes the duty of seeing that its track is reasonably safe for the purposes of such a transit, and that the car is operated with due care by those intrusted with its management. Accordingly, where a detective, employed by a railroad company to ferret out thefts of prop-

1 Philadelphia, etc., R. Co. v. Derby, 14 How. 468; Steam-boat v. King, 16 How. 469; Wilton v. Middlesex R. Co. 107 Mass. 108; Sherman v. Hannibal, etc., R. Co. 72 Mo. 108; Jacobus v. St. Paul, etc., R. Co. 20 Minn 125; S. C. 125 Mass. 130; Gradin v. St. Paul, etc., R. Co. 14 N. W. Rep. 881; Siegrist v. Arnot, 10 Mo. App. 197; Pittsburgh, etc., R. Co. v. Caldwell, 74 Pa. St. 421; Washburn v. Railroad Co. 1 Head, 638; Nolton v. Railroad Co. 20 Minn. 125; Rose v. Railroad Co. 39 Iowa, 246; Todd v. Old Colony R. Co. 3 Allen, 118; S. C. 7 Allen, 207; Railroad Co. v Michie, 83 Ill. 428.

2 Steam-boat v. King, 16 How. 469.

3 Shiells v. Blackburn, 1 H Bl. 158; Wilson v. Brell, 1 Mees. & W. 113; Nolton v. Western R.

Corp. 15 N. Y. 444; Siegrist v. Arnot, 10 Mo. App. 197, 208.

4 Siegrist v. Arnot, supra.

5 Siegrist v. Arnot, 10 Mo. App. 197, 201; Philadelphia, etc., R. Co. v. Derby, 14 How. 468; Garretzen v. Duenckel, 50 Mo. 104; Snyder v. Hannibal, etc., R. Co. 6 Mo. 413.

6 Siegrist v. Arnot, supra; Wilton v. Railroad Co 107 Mass. 108; S. C. 125 Mass. 130; Pittsburgh R. Co. v. Caldwell, 74 Pa. St. 421; Washburn v. Railroad Co. 4 Head. 638.

7 Wilton v. Railroad Co. supra; Pittsburgh R. Co. v. Caldwell, supra.

8 Washburn v. Railroad Co. supra.

9 Sherman v. Hannibal, etc., R. Co. 72 Mo. 64, 65.

erty of the company, was sent, by direction of one of its agents, upon a hand car, from one station to another, for this purpose, and was injured in consequence of the fact that he had, under the direction of the person in charge of the car, taken his position upon the car with his heels hanging down, and that some plank at a road-crossing had become warped so that they stuck up several inches from the level and came in contact with his heels as the car passed rapidly over them, it was held that there was a case to go to the jury. The court could not say, as a matter of law, that it was any negligence for the company to leave the plank warped and elevated as alleged; nor that it was negligence for the plaintiff to ride upon the car in the manner in which he did, he having done so at the direction of the person in charge of the car.[1]

§ 3. CARRIER OWES NO SPECIAL DUTY TO TRESPASSERS.   (1) *General Rule.* The duties above enumerated arise only where the relation of carrier and passenger is deemed in law to exist. The carrier owes no such duties to trespassers upon his vehicles. He is not, in law, bound to furnish safe vehicles, and careful and skillful servants, to maintain a careful and continuous inspection, and to exert in all these particulars the highest degree of care of very cautious persons, *for them.* If they get upon his vehicle without his authority, they take things as they find them, and assume the risk, without recourse against him, of any injuries which may happen to them through any failure of the duties which he may owe to those who are passengers.[2]

(2) *Who are Trespassers within the Meaning of this Rule.* We have already seen[3] that those who ride upon the carrier's vehicle, with or without paying fare, with the authorization of the carrier himself, or of that particular servant of the carrier whose duty it is to determine who shall ride on his vehicles and who shall not,—as the master of his vessel, the conductor of his railway train, or the like,—is deemed in law a *passenger,* and not a *trespasser.* But, in the prosecution of his business, the carrier is frequently compelled to employ other servants, either subordinate to the former or whose duties are entirely disconnected from those of the former, such as the engineer, fireman, and brakemen of a railway train, or the engineers, pilots, firemen, and common seamen employed on a vessel. These servants of the carrier have special and limited duties to perform; they are not in general command of his vehicle; they are not his *alter ego* in the general conduct of the trip or voyage; they have no authority to say who shall or who shall not ride on the train or vessel; and their authorization, invitation, or consent that a person who has paid no fare to the carrier shall ride on his vehicle, does not make such person rightfully there, and does not extend to him the rights of a passenger, or made him any the less a trespasser.[4] It may accordingly be laid down that those are trespassers, within the meaning of the foregoing rule, who have

1 Cooly v. Chicago, etc., R. Co. 53 Wis. 657.

2 Toledo, etc., R. Co. v. Brooks, 81 Ill. 111; Chicago, etc., R. Co. v. Michie, 83 Ill. 427; Toledo, etc., R. Co. v. Biggs, 85 Ill. 80; Siegrist v. Arnot, 10 Mo. App. 197, 201; Duck v. Allegheny Valley R. Co. 91 Pa. St. 458; S. C. 2 Amer. & Eng. R. Cas 1.

3 Ante, § 2.

4 Chicago, etc., R. Co. v. Casey, 9 Bradw. 632, 639; Chicago, etc., R. Co. v. Michie, 83 Ill. 427; Snyder v. Hannibal, etc., R. Co. 60 Mo. 412; Flower v. Penn. R. Co. 69 Pa. St. 210; Sherman v. Hannibal, etc., R. Co. 72 Mo. 62. The rule has been distinctly laid down in a late case in Pennsylvania that a person riding on a railroad train, in violation of the regulations of the company, with or without the knowledge of the company's train conductor, cannot recover damages for in-

juries received while so riding. The case was that of a boy who was permitted by the conductor of a passenger train to ride upon the train for the purpose of selling newspapers, in violation of the regulations of the company. He was killed by an accident. It was held that the company were not liable to pay damages on account of his death, in an action brought by his parents. The court said : "It is not like a person allowed by the conductor to ride in a car *as a passenger* without paying fare. In that case there is a legal liability to the company for the fare. This is the case of a mere trespasser, and the company owed him no duty." Duck v. Allegheny Valley R. Co. 91 Pa. St. 458 ; S. C. 2 Amer. & Eng. R. Cas. 1. This decision is contrary to the general current of authority. Ante, § 2.

not paid their fare, and who are not on the carrier's vehicle either by his own invitation. authorization, or consent, or by the invitation, authorization, or consent of his servant or agent in general charge of his vehicle; and, conversely, it may be added that those who are there merely by the authorization, invitation, or consent of other servants of the carrier are trespassers.

(3) *Illustrative Cases.* (*a*) *Locomotive Engineer no Authority to Invite Persons to Ride on the Train.* Applying this principle, it has been held that, if a locomotive engineer invite a boy to ride upon the train, contrary to his duty to the company and in violation of his instructions, the mere fact that he is in charge of the engine which is propelling the train at the time when he extends the invitation to the boy, will not make the company responsible for any hurt which the boy may receive in consequence of accepting such invitation.[1] Third persons are not bound in all cases by the private instructions which a carrier may have given to his servants, but are entitled to presume that such servants, in the particular employment, have the same authority which persons so employed usually have. "This," said the learned judge, "is what is meant by their *apparent authority.* It is based upon those presumptions which the public have a right to draw from the usual course of business in matters of a similar nature; or, in other words, from general knowledge and observation of the powers and duties ordinarily intrusted to servants employed to fill the same station." [2] Applying this principle to the authority of a railway locomotive engineer, it has been held that there is no implication, growing out of the well-known character of his employment, of any authority on his part to permit persons to ride upon the train who are not in possession of regular passenger tickets, or passes. In so holding, the following language was used: "The system by which railway companies conduct their business of carrying passengers and freight has now been so long in operation, and is being conducted with such a degree of uniformity, that its general features must be presumed to be known and understood by the public. Among these may be mentioned the division of their freight and passenger business into two distinct departments, and the admission of passengers upon freight trains only under well-known limitations and restrictions, or their exclusion therefrom. Another is the assignment to their respective and definite duties of the various employes on their trains. It is a fact with which the public must be presumed to be familiar, that the employes of an ordinary railway train consist of the conductor, an engineer, and one or more brakemen, and that each of these is charged with his own peculiar duties and powers. The conductor is the superior officer, and has general charge and control of the train, admitting and discharging passengers, collecting fares, and directly representing the company in its intercourse with the public. The duties of the engineer are subordinate, and of an entirely different character. His place is on the engine, and nowhere else, and his duties are limited to running and managing his engine. With the admission or discharge of passengers he has nothing to do, except so far as the proper management of his locomotive may furnish them the opportunity for getting on and off the train. No authority beyond this can be inferred from the usual course of his business on railway trains, or from the powers which locomotive engineers usually have and exercise." [3] The supreme court of the same state have expressed the same doctrine in the following language: "The permission of the engine-driver, if given, was not the permission of the company, as he had no power to give it. Had the conductor of the train given the permission, or, knowing he was upon the engine, suffered him there to remain, it might be considered the act of the company. The driver of the engine occupies a different and subordinate position. He has no right to say

[1] Chicago, etc., R. Co. v. Casey, supra.    [3] Id. 640.
[2] Id. 640, per BAILEY, J.

who shall be upon the train, or to take cognizance of such as may be upon it. He has to look to his engine and keep it in order, and permit no one to ride upon it without the permission of his superior." [1]  When, therefore, according to the plaintiff's testimony, the engineer of a freight train, which was moving slowly past the station, gave some boys permission to ride on the train, and one of them, in attempting to get on, was killed, it was held that there could be no recovery from the company; for the engineer, in giving this permission, acted neither within the scope of his actual or of his implied authority. [2]

(b) *Child of Tender Years Injured while on Street Car Selling Water.* Two cases, the results in which are rather to be referred to the general rules of the law relating to negligence in the case of injuries to children, may be here inserted. In a late case in Philadelphia, it appeared that a child between six and seven years of age had been in the habit, with several companions, of getting on and off the company's street cars, while moving slowly in ascending a hill, for the purpose of selling water to the drivers and conductors, and that, while so engaged, the child fell from the front platform, which was without a guard, and was killed. It was held by ALLISON, P. J., that there was no case to go to a jury, because of contributory negligence of the plaintiff, the mother of the child, in allowing the child to engage in such an employment at such a tender age. [3]

(c) *Unattended Children on Railway Passenger Train.* Two little girls, one of them about five years old, and the other older, but not larger, were put by a female relative upon a passenger car, with the intention that they should go from one station to another without paying fare. It was not the custom of the company to demand fare of children so young, and the conductor passed them without noticing them, supposing that they were in charge of some adult person. No employe of the company knew that they were upon the train unattended. In attempting to get off at the station, through the aid of one of the passengers, one of them fell under the wheels and was injured. A Kansas jury awarded a verdict of $12,500 against the railroad company, and judgment was rendered thereon. This judgment was reversed, upon the ground that there was no evidence of any negligence upon the part of the company. [4]

(4) *Youth or Inexperience of Passenger not Looked to for the Purpose of Enlarging Implied Authority of Carrier's Servant.* If a youthful or inexperienced person is hurt or killed, in consequence of accepting the invitation, or obeying the direction, of one of the carrier's servants, who, at the time, is acting neither within the scope of his express nor implied authority,—as where the engineer of a freight train permits some boys to ride upon the train,— there is no principle of law under which the implied authority of the carrier's servant can be enlarged, in view of the youth or inexperience of the person so killed or injured. It matters not that *he* may not be of sufficient maturity to be presumed to know or understand the precise nature of the relative duties of the several employes of the carrier. It does not follow from this fact that, as to him, the invitation or direction which has been given to him by the particular servant should be regarded as within the scope of such servant's employment. "The scope of the servant's apparent authority cannot be made to depend upon the ignorance or want of experience of particular individuals, but upon the presumptions which the public at large have a right to draw from their general knowledge of the powers usually exercised by parties oc-

[1] Chicago, etc., R. Co. v. Michie, 83 Ill. 427.

[2] Chicago, etc., R. Co. v. Casey, 9 Bradw. 632, 641.

[3] Smith v. Passenger R. Co. 13 Phila. 6; S. C. 9 Reporter, 454; affirmed on appeal, 92 Pa. St. 450, opinion by TRUNKEY, J.

[4] Atchison, etc., R. Co. v. Flynn, 24 Kan. 627; S. C. 11 Reporter, 223; 1 Amer. & Eng. R. Cas. 240.

cupying the same station. The ignorance of the deceased should doubtless be considered as bearing upon the question of his own contributory negligence, but cannot operate to enlarge the boundaries of the agent's authority."[1] The youth or inexperience of the person injured "might excuse him from concurring negligence, but cannot supply the place of negligence on the part of the company, or confer an authority on one who has none."[2]

§ 4. (1) (*a*) BUT CARRIER OWES THE GENERAL DUTY TO TRESPASSERS OF TAKING CARE NOT TO INJURE THEM. But while the carrier does not owe to trespassers on his vehicle the special duties which he owes to passengers, he stands under the same general duty of taking ordinary or reasonable care not to injure them, which every person is bound to exercise towards every other person, and even towards animals, although such persons or animals may be found trespassing on his premises. This rule had its origin in the leading case of *Davies* v. *Mann*,[3] where it was laid down, in the English court of exchequer, that if A. has negligently exposed his property to injury, and B. has negligently injured it, B. must pay damages to A., if B. could, by the exercise of ordinary care, have avoided injuring it. That case was decided in 1842. It has met with almost uniform approval in England and in this country, from that day to this. A rule of law which has been almost uniformly conceded with regard to injuries to *property* when helplessly exposed, can, by no process of reasoning, be denied in case of injuries to *human beings* when exposed in the same way; and though there is some wavering in the decisions, it is now generally so applied. A frequent illustration of it is found in the case of injuries to trespassers upon railway tracks; and here the rule as laid down by HENRY J., in a case in the supreme court of Missouri, is believed to express in apt words the now generally received view: "When it is said, in cases where the plaintiff has been guilty of contributory negligence, that the company is liable if, by the exercise of ordinary care, it could have prevented the accident, it is to be understood that it will be so liable if, after the discovery by defendant of the danger in which the party stood, the accident could have been prevented; or if the company failed to discover the danger through the recklessness or carelessness of its employes, when the exercise of ordinary care would have discovered the danger and avoided the calamity."[4] The difference of opinion which is found in the cases under this head relates to the *degree of care* which a railroad company is bound to exert to prevent injuries to trespassers on its track or on its vehicles,—some courts holding that it is responsible for the want of ordinary care, and others, that it is responsible only for wanton injuries, or for such gross negligence as is equivalent in law to intentional mischief.[5] The same principles apply to some extent in respect of injuries to trespassers on the carrier's vehicles; though in respect of the degree of care which his servants are bound to exert before discovering the trespasser, the analogy may not be complete. It may be said that the running of a railway train at full speed is always dangerous, both to persons who may be upon the track, and to persons who may be upon the train. Those upon the engine are under the duty of maintaining a constant lookout, and in the night-time the company will not, under ordinary circumstances, be excusable for running an engine without a head-light, to enable those in charge of the engine to perform this duty. But it cannot be said that either those in

1 Chicago, etc., R. Co. v. Casey, 9 Bradw. 632, 643.

2 Flower v. Penn. R. Co. 69 Pa. St. 210; Towanda Coal Co. v. Heeman, 86 Pa. St. 418; Snyder v. Hannibal, etc., R. Co. 60 Mo. 413; Sherman v. Hannibal, etc., R. Co. 72 Mo. 62, 66.

3 10 Mees & W. 545; S. C. 2 Thomp. Neg. 1105.

4 Harlan v. St. Louis, etc., R. Co. 65 Mo. 22; S. C. 6 Cent. L. J. 229; 1 Thomp. Neg. 439. See,

also, Brown v. Hannibal, etc., R. Co. 50 Mo. 461; Isbel v. Hannibal, etc , R. Co. 60 Mo. 475; S. C. 2 Cent. L. J. 590; Finlayson v. Chicago, etc., R. Co. 1 Dill. 579; Baltimore, etc., R. Co. v. State, 36 Md. 366; Baltimore, etc., R. Co. v. State, 33 Md. 542; Morris v. Chicago, etc., R. Co. 45 Iowa, 29; Weymire v. Wolfe, 52 Iowa, 533.

5 See 2 Thomp. Neg. p. 448 et seq.

charge of the engine, or the conductor or brakemen, are under the duty of maintaining an active vigilance for the discovery of trespassers on the train, with the view of seeing that such persons do not ride in dangerous places, or that they otherwise avoid exposure to danger. But *after the discovery of the trespasser*, the parallel becomes complete in both cases. The trespasser has not forfeited his right to immunity from death or bodily harm by being a trespasser; and, on principle, the servants of the company are bound to exercise such reasonable care as they can, consistently with their other duties, to the end that the trespasser receive no injuries other than those which may arise from the accidents, the risks of which, as already stated,[1] he has assumed. If, then, they force him off the carrier's vehicle,[2] or order him off when it is going at a rate of speed which renders it dangerous for him to get off,[3] or otherwise negligently injure him, the carrier may become liable in damages. This will be made more clear by the following illustrative cases.

(b) *Trespassing Boy Ordered off a Train and Injured in Getting off.* The case was that a boy had gotten into a freight car for the purpose of stealing a ride, had been ordered out by the conductor, and, in getting out, had fallen under the wheels and was killed. The court, in charging the jury, directed their attention to a number of circumstances which they should take into consideration in determining the question whether the deceased was guilty of negligence which contributed to his death, but omitted to tell them that they should take into consideration the fact that the deceased was a trespasser upon the defendant's train. It was held that this was not erroneous. In so holding, the court, through ADAMS, C. J., made the following observations: "As the instruction directed the jury to consider all the circumstances, we are not prepared to say that it could be held to be erroneous, even if the circumstance that the deceased was a trespasser were as important as defendant contends that it is. But, in the view which we take of the case, that circumstance was not of great importance. The deceased, at the time he was discovered in the empty freight car, does not appear to have been in a place of immediate danger. If he had been allowed to ride there, or had been removed before the cars were put in motion, it does not appear that he would have been exposed to much danger; certainly not to the extent which happened. The danger arose and the accident happened by reason of something which transpired after the trespass had been committed, and, what is especially significant, *after the boy had been discovered by the conductor in the car*. The proximate cause of the boy's injury was not the entering of the car. It was either the carelessness in attempting to escape in the manner he did, while the car was in motion, or else it would be the carelessness of the company in causing him to do so. And this would be so, even if we should conclude that he exposed himself to danger by merely entering the car."[4]

(2) *Illustrative Cases—Carrier liable.* (a) *Trespasser on Engine Wrongfully Thrown off by the Defendant's Servants and Hurt.* While the engine of a railway company was standing still upon a side track, the plaintiff, with the knowledge of, and without any objection by, the company's servants, mounted upon the same and seated himself under the head-light. Shortly after this, the servants of the company put the engine in motion, and while the same was running at a rate of speed which rendered it unsafe for the plaintiff to get off, called upon him to do so. He replied that he would get off if the engine was stopped. The servants of the company declined to stop the engine, and one of them shoved him off in such a manner that the engine passed over his leg, crushing it. It was held that the wrongful act of the defendant's servants in

---

1 Ante, § 3.

2 Carter v. Louisville, etc., R. Co. 8 Amer. & Eng. R. Cas. 347, (Sup. Ct. Ind. 1882.)

3 Benton v. Chicago, etc., R. Co. 55 Iowa, 496; S C. 11 Reporter, 837.

4 Benton v. Chicago, etc., R. Co. 55 Iowa, 496; S. C. 11 Reporter, 837.

thrusting him off the engine, under the circumstances, was the proximate cause of the injury, and not the wrongful act of the plaintiff in getting upon the engine. The servants of the defendant, in so thrusting him off, were acting within the general scope of their employment, and the defendant was accordingly liable.[1]

(*b*) *Contributory Negligence in Such a Case.* In the case just cited it was held that the question whether he was guilty of contributory negligence in obeying the order under the circumstances was a question for the jury. "It is not," said the court, "for the company to say, if the train was in motion when the order was given, that the imprudence of the boy was so great in yielding prompt obedience to the order that the company ought to be excused for giving such an order, unless the age of the boy was such that he might reasonably have been expected to refuse. Possibly the boy, young as he was, had such knowledge, and should have had such presence of mind, as to have remained in the car while in motion, notwithstanding he had been ordered to leave; but we cannot say, as a matter of law, that, if he had all the knowledge supposed in the instruction, and the other circumstances had been as supposed, he was necessarily guilty of contributory negligence."[2] A similar ruling is found in California, where a boy 16 years of age was ordered by the conductor of the train to leave a car while in motion. He obeyed the order and was injured. The court held that they could not judicially say that the act was voluntary, and that it must be left to the jury to say whether he did or did not leave under compulsion.[3]

(*c*) *Boy Stealing a Ride on Engine.* In a late case in Michigan a boy eight years old, trespassing on the premises of a railroad company, got on the step of an engine, and was ordered off by the fireman. In jumping off he fell. The locomotive was started at the same time, and the tender passed over his leg. He was a boy of more than average intelligence, and had been warned against going on the premises or riding on the engine. It was held that the company could not be held liable for the injury, in the absence of evidence tending to show that the engineer, or other servants of the company in charge of the locomotive, knew that the child was in the way, or that they had been reckless or negligent in the management of their engine, or could have anticipated the injury. The injury was deemed to have resulted from the negligence or carelessness of the boy himself, and from his fall, which was accidental, and such as the persons in charge of the engine would not be likely to anticipate.[4]

(*d*) *A Case which Ignores the Foregoing Rule—An Intruder on a Hand Car without Rights.* In a late case in Maine it is held that damages cannot be recovered for the death of a person caused by his being negligently run over by a train of cars while riding between stations on a hand car of the defendant's road, at the invitation of the foreman of a section of such road, unless it be made to appear that the company was a common carrier of passengers by hand cars.[5] Although the opinion in this case was pronounced by a judge of reputation, and was concurred in by four other judges, it seems entirely indefensible. It declares, in substance and effect, that an intruder or trespasser upon the track of a railway company can ordinarily be run down and killed by a train of the company, and that the company will not be liable to pay damages to his personal representative. If the deceased, instead of being a man, had been an ass,[6] or a hog,[7] or an oyster,[8] the rule must have

1 Carter v. Louisville, etc., R. Co. 8 Amer. & Eng. R. Cas. 347, Supreme Court of Indiana, 1882.
2 Benton v. Chicago, etc., R. Co., 55 Iowa, 496; S. C. 11 Reporter, 837,—opinion by ADAMS. C. J.
3 Kline v. Central Pac. R. Co. 37 Cal. 400, 404.
4 Chicago, etc., R. Co. v. Smith, 46 Mich. 504.

5 Hoar v. Maine Cent. R. Co. 70 Me. 65.
6 Davies v Mann, 10 Mees. & W. 545.
7 Kerwhacker v. Cleveland, etc., R. Co. 3 Ohio St. 172.
8 Mayor of Colchester v. Brook, 7 Q. B. 339.

been different. The process of reasoning which culminates in the conclusion that, in order that a railway company may owe to a man who happens to be upon its track the duty of not killing him, it is necessary that such man should have bought a passage ticket, will certainly arrest the attention of the profession.

§ 5. BURDEN OF PROOF IN CASE OF ACCIDENTS TO TRESPASSERS. The rule that the mere happening of an accident to the passenger through the failure of some of the carrier's means of transportation is presumptive evidence of negligence, such as imposes upon the carrier the burden of excusing himself, has no application to a case where a child, in endeavoring to jump upon a moving train of cars for the purpose of stealing a ride, falls on the track and is killed. The relation of carrier and passenger does not exist. It was said that no authority could be produced which holds that, when a. trespasser on a railroad train is killed, the burden of liability is thrown upon the company, upon proof of the fact, unless the company can show by satisfactory affirmative evidence that neither it nor its agents or employes were at fault.[1]

§ 6. PENNSYLVANIA STATUTE AS TO PERSONS WHO ARE NEITHER EMPLOYES NOR PASSENGERS. A state whose legislation has been notoriously corrupted by railroad influences, at the most corrupt period of its legislation, disfigured its statute-book with the following law: "If any person shall sustain personal injury or loss of life, while lawfully engaged or employed on or about the road, works, depots, and premises of a railroad company, or in or about any train or car therein or thereon, of which company such person is not an employe, the right of action to recover in all such cases against the company shall be such only as would exist if such person were an employe: provided, that this section shall not apply to passengers."[2] The purpose of this law is seen at a glance. By a rule interpolated upon the common law by judicial legislation within the last 40 years, a servant cannot recover damages of his master for an injury which happens to him through the negligence of a fellow-servant engaged in the same common employment. Now, the object and effect of the above statute was to extend this rule to the cases of *all persons* who may happen to be laboring or engaged about the premises, or upon the trains of railroad companies, except those who are *passengers;* so that any person, not a passenger, who may be compelled to place himself in such a situation, must accept all risks of the negligence of the pecuniarily irresponsible persons who are employed by railroad companies, without any recourse in damages against the companies themselves, other than the limited recourse which an employe would have under like circumstances. Such a law could not have been passed except as the result of direct or indirect purchase. There is not a state in the Union in which such a law, submitted to the popular vote, would not be rejected by an overwhelming majority. Its very existence implies a breach of a public trust upon the part of the representatives of the people by whose votes it was enacted. That it has found judicial apologists is not creditable to the jurisprudence of Pennsylvania. A learned judge of the supreme court of that state has found *"strict justice"* in it.[3] Its constitutionality was affirmed by the supreme court of that state

---

[1] Sommers v. Mississippi, etc., R. Co. 71 Tenn. (7 Lea,) 201. In the opinion of the court in this case it is said by COOPER, J.: "There are cases where the occurrence of an injury is *prima facie* evidence of liability, and the burden is shifted accordingly. But the weight of authority seems to be that, in the case of an injury to a passenger, it is incumbent upon the plaintiff to prove that the proximate cause of the injury was the want of something which, as a general rule, the carrier was bound to supply, or the presence of some-

thing which, as a general rule, the carrier was bound to keep out of the way; or, as it has been otherwise expressed, the injured party must not only be free from fault, but must prove facts creating a presumption, at least, of negligence in the company producing the injury."

[2] Pennsylvania Act of April 4, 1868; Pennsylvania Pamphlet Laws, 1868, p. 58.

[3] Penn. R. Co. v. Price, 96 Pa. St. 256, 265; S. C. 1 Amer. & Eng. R. Cas. 234.

as soon as it was assailed.[1]  It has been held to apply to one who is injured while unloading his own goods from the cars of a railroad company, under permission granted by the agent of the company.[2]  It applies to the servants of a railroad company which has a right of trackage over the railroad of another company; so that if a servant of the former company, while employed under this right upon the road of the latter company, is injured through the negligence of a servant of the latter company, he cannot recover damages of the latter.[3]  It also applies to the case of a route agent of the United States post-office department, riding upon a railway train in the discharge of his official duties.  If injured through an accident to the train, this statute prevents him from recovering damages of the company, as he is not deemed a " passenger," within the proviso of the statute.[4]

## II. Passenger Injured while Riding in a Dangerous and Improper Place on the Carrier's Vehicle.

§ 7. GENERAL RULE.  It is a general rule that, if a passenger is injured while voluntarily and without necessity riding in a place on the carrier's vehicle which is not allotted to passengers, in which place a person would be more likely to be injured from an accident of a given kind, if an accident of such kind happens, and he is injured by it, and would not have been injured if he had remained in a proper place, he cannot recover damages from the carrier.[5]  An exception to this rule, admitted by some courts,[6] and denied by others,[7] is that the carrier may be liable where the passenger assumed the dangerous and improper place on the carrier's vehicle by the authorization or consent of his conductor or other servant in charge of the same.  Upon grounds fully set forth in the preceding subdivision,[8] this exception does not apply in cases where the passenger assumes the dangerous and improper place upon the invitation, or with the consent, of an *unauthorized* agent of the carrier,—as an engineer or brakeman of a railway train.  This rule will now be discussed and illustrated.

§ 8. A RECENT COMMENTARY UPON THIS RULE.  In cases of this kind, the right of such passenger or his legal representative to recover damages will clearly depend upon a consideration of the question whether the accident was such that his danger was or was not increased by riding where he did.  A very intelligent discussion of this subject is found in a late case in Kentucky, where it is said by COFER, J.: " If a whole train be precipitated down an embankment, or through a bridge, into deep water, and a passenger seated in the express car is drowned, his representative will have the same right to recover as the representative of a passenger who was seated in a passenger coach.  There could be no pretense for saying that, because the passenger in the express car was more exposed to danger in case of a collision with a train running in the opposite direction, than he would have been if he had been in the passenger coach, he ought not to recover, when it is clear that, as respects the misfortune which actually occurred, his danger was not at all increased

---

1 Kirby v. Railroad Co. 76 Pa. St. 506.

2 Richard v. North Penn. R. Co. 89 Pa St. 193.

3 Mulherrin v. Delaware R. Co. 81 Pa. St. 366.

4 Penn. R. Co. v. Price, 96 Pa. St. 256, opinion by PAXSON, J.; TRUNKEY, J., dissented; S. C. 1 Amer. & Eng. R. Cas. 234.

5 Pennsylvania R. Co. v. Langdon, 92 Pa. St. 21, 27; Houston, etc., R. Co. v. Clemmons, 55 Tex. 89; Railroad Co. v. Jones, 95 U. S. 439; Chicago, etc., R. Co. v. Carroll, 5 Bradw. 201, 210; Kentucky Cent. R. Co. v. Thomas, 79 Ky. 160.

6 Kentucky Cent. R. Co. v. Thomas, supra; Dunn v. Grand Trunk R. Co. 58 Me. 187; Clarke

v. Railroad Co. 36 N. Y. 135; Carroll v. New York, etc., R. Co. 1 Duer, 571; O'Donnell v. Allegheny, etc., R. Co. 59 Pa. St. 239; Watson v. Northern R. Co. 24 U. C. Q. B. 98; Fowler v. Baltimore, etc., R. Co. 18 W. Va. 579.  See also. St. Louis, etc., R. Co. v. Cantwell, 37 Ark. 519; Filer v. New York, etc., R. Co. 49 N. Y. 47; Lambette v. North Carolina, etc., R. Co 66 N. C. 499.

7 Hickey v. Boston. etc., R. Co. 14 Allen, 429; Downey v. Hendrie, 46 Mich. 498, 501; Pennsylvania R. Co. v. Langdon, 92 Pa. St. 21; S. C. 1 Am. & Eng. R. Cas. 87.

8 Ante, § 3, (1,) (2,) (3.)

by the fact that he was in the express car. So, also, of a large class of railroad disasters which result from the giving way of the track, or the breaking of some portion of the car. These are as liable to occur at one portion of a train as at another, and consequently a passenger is in no more danger of injury from such accidents (?) in the express car than in a passenger car; and the fact that he was in that car when the accident occurred would not defeat his right to recover, unless, perhaps, the injury should result from some agency in that car which would not have existed in a passenger car. But there is another class of disasters in which the danger may be greater in the express car than in the passenger car. Express cars are usually in advance of passenger cars, and, in case of collision with stock or other objects on the track, or with trains running in the opposite direction, the danger would be greater in the express car. It seems to us, therefore, that when contributory negligence is interposed as a defense to an action against a railroad company for negligently injuring a passenger, and the supposed negligence consists in the fact that the passenger voluntarily occupied a position in the train other than the position he should have occupied, the nature of the accident causing the injury is to be considered; and if, upon such consideration, it appears that the danger of injury from that particular accident was materially increased by the fact that the passenger was in that particular place, instead of the place he should have occupied, he ought not to recover unless he was there with the consent of the conductor. But if the nature of the accident be such that the danger of injury was not enhanced in consequence of the position occupied by the passenger, or if the accident was of such a nature as was as likely to occur in one portion of the train as another, or if he occupied the place with the knowledge or consent of the conductor, his right of recovery will not be affected by the fact that he was at an improper place." [1]

§ 9. HOW, UNDER ILLINOIS DOCTRINE OF COMPARATIVE NEGLIGENCE. In Illinois, under the doctrine of comparative negligence which there obtains, it has been ruled that such conduct on the part of the passenger is such a high degree of negligence as will defeat a recovery, unless the servants of the company are guilty of wanton or reckless misconduct. [2]

§ 10. ILLUSTRATIVE CASES FALLING WITHIN THIS RULE. (1) *Passenger Riding in Baggage Car.* A very valuable contribution to the law on this subject is found in a late case in Pennsylvania, in which the opinion of the court was delivered by PAXSON, J. A railroad man traveling on the defendant's road as a passenger, chose to ride in a baggage car. He was well aware of a regulation of the company forbidding this, which regulation was conspicuously posted in the baggage car itself. The notice recited that "they [the train men] must see that passengers are properly seated, and will not allow them to stand on the platforms of cars, nor ride in the baggage or mail cars. Conductors and brakemen are instructed to strictly enforce this rule, and it is expected that passengers will cheerfully comply, as the rule is one intended for their own safety; it being particularly dangerous for passengers to be on platforms as trains approach stations." While so riding the train collided with another train. The baggage car was wrecked and the passenger was killed. If he had taken a seat in one of the passenger coaches, the evidence tended to show that he would not have been hurt. It was held, as applicable to these facts, substantially, that there could be no recovery. The right of a railroad company to make reasonable rules for its own protection and for the safety and convenience of its passengers had been frequently recognized, and was affirmed. It was held that a passenger who voluntarily leaves his proper place in a passenger car, in violation of the well-known rules of the company, to ride in the baggage car or other known place of danger, and is injured in con-

1 Kentucky Cent. R. Co. v. Thomas, 79 Ky. 160.    2 Peoria, etc., R. Co. v. Lane, 83 Ill. 448.

sequence of such violation, cannot recover damages therefor. But it was conceded that this rule would not apply to an accident which might be the result of a brief visit to the baggage car to give some needed directions about the passenger's baggage, to have it rechecked, or for any other legitimate purpose. "The baggage car," said PAXSON, J., "is a known place of danger. In this respect it differs from the cow-catcher and platform only in degree. It is placed ahead of the passenger cars, and next to or near the locomotive. In cases of collision it is the first car to give way to the shock, and frequently is the only one seriously injured. It is treated as dangerous by the rules of all well-regulated companies, and the rule of the defendant company emphatically declared it to be so. An infant or an idiot might be excused from riding in such a position, by reason of his lack of mental capacity; but an intelligent man, accustomed to railroad travel, must be presumed to know its danger. It is patent, and the same under all circumstances. \* \* \* In considering this question, regard must be had to the character of the rule violated. The rules adopted by railroad companies are a part of their police arrangements. Some of them are for the convenience of the company in the management of its business; others are for the comfort of passengers; and yet others have regard exclusively to the safety of passengers. The distinction between them and the difference in the consequences of their violation are manifest. As an illustration: it would be unreasonable to hold that the violation of the rule against smoking could be set up as a defense against an action for personal injuries resulting from the negligence of the company. On the other hand, should a passenger insist upon riding upon the cow-catcher in the face of the rule prohibiting it, and, as a consequence, should be injured, I apprehend it would be a good defense to an action against the company, even though the negligence of the latter's servant was the cause of the collision or other accident by which the injury was occasioned."[1]

In another case a passenger riding on a railway train, who, instead of occupying a coach provided for passengers, after going into the baggage car to get a drink of water, remained there for an unreasonable length of time,—in the particular case five minutes,—without necessity therefor, knowing the fact that he was in more danger there than in the passenger coach, and, while thus remaining, received an injury in consequence of the wrecking of the train, which injury he would have avoided if he had remained in the passenger coach, was held guilty of such contributory negligence as prevented him from recovering damages from the company.[2]

(2) *Passenger Riding on Platform of Steam Railway Car.* If a passenger, even at a time while many of the cars are crowded in consequence of an extraordinary influx of passengers, voluntarily remains on the platform at a time when he might, by the exercise of reasonable diligence and exertion, find room within some of the cars of the train, and, in consequence of being so upon the platform, is thrown or pushed off by the ordinary movements of the train, whereby he sustains injuries, he cannot recover damages from the company; and this is so, although he may not have actually known that there was any room for him in any of the cars, provided the circumstances were such that he might have discovered this by reasonable observation and effort.[3]

(3) *What if Passenger is Obliged so to Ride by Reason of Extraordinary Crowd of Passengers.* In a case of this kind it was urged that the carrier might, in view of the unexpected number of passengers who presented themselves, have refused to sell tickets, or admit passengers to its cars beyond their reasonable seating capacity, and that it could in no other way escape the imputation of negligence for a failure to furnish suitable accommodations

[1] Pennsylvania R. Co. v. Langdon, 92 Pa. St. 21, 27.

[2] Houston, etc., R. Co. v. Clemmons, 55 Tex. 89.

[3] Chicago, etc., R. Co. v. Carroll, 5 Bradw. 201, 210.

to all who were accepted as passengers. The court, however, did not take this view. BAILEY, P. J., said: "A rule somewhat analogous to the one here contended for obtains in the case of common carriers of freight. It is doubtless competent for such carriers, when there is a sudden and unexpected influx of freight beyond their ordinary means of transportation, to refuse to receive more than they could reasonably transport. But it is held that where they receive freights and undertake to carry them, they cannot excuse the failure to transport safely and deliver, by alleging that the amount received was beyond their means of transportation. There is, however, a very broad distinction between the duties and liabilities of common carriers of freights and passengers. The former are under an absolute duty to transport and deliver, from which, when once undertaken, nothing can release but the act of God or of the public enemy. The liability of common carriers of passengers is much more limited and qualified. The law enjoins a very high degree of care and diligence, it is true; but, unless there is some failure in the exercise of such care and diligence, there is no liability for any injuries their passengers may receive. Doubtless the defendant would have been justified in refusing to carry more than could be reasonably accommodated in the cars it had at command; but it was not bound to do so. If more than could be seated desired to ride, and were willing to stand in the aisles, or even on the platforms, we are unable to see how the defendant was guilty of negligence in permitting them to do so. Doubtless, greater care was required in the running and management of the train itself, crowded with passengers; but permitting it to be thus crowded, when there was no other means of transport, was not of itself negligence." [1] It was therefore held, in substance, that where an unforeseen crowd presents itself to a railway company for transportation, upon a holiday occasion, and the company is unable to furnish seats for all who purchase tickets, in consequence of which the platforms of the cars are crowded with passengers, and one of them is thrown off by an ordinary jerk of the car, in detaching another car from the train, and injured, the company will not be liable for the injury.[2]

(4) *Riding on the Pilot of the Engine.* The same rule was held to apply where the person injured was riding on the pilot or bumper of the engine.[3]

(5) *Riding in Sitting Position on Front Platform of Street Car.* Upon the same principle, it has been held that a passenger who receives an injury by falling from the front platform of a street railway car while in motion, upon which he occupied a sitting position, against the rules of the company and the warning of the driver of the car, and without any reasonable excuse therefor, is not in the exercise of such care as will entitle him to maintain an action against the company. A regulation by a street railway company that passengers shall not ride on the front platform of its cars is a reasonable regulation.[4]

§ 11. ILLUSTRATIVE CASES WHICH DO NOT FALL WITHIN THE RULE. (1) *Riding on Platforms of Street Cars.* (a) *So to Ride not Negligence per se.* For a passenger to ride on the *front* platform of a street railway car is not negligence *per se.*[5] And for stronger reasons, the same rule would apply to the act

---

1 Chicago, etc., R. Co. v. Carroll, 5 Bradw. 201, 208.

2 Id.

2 Railroad Co. v. Jones, 95 U. S. 439.

4 Will v. Lynn, etc., R. Co. 129 Mass. 359; 11 Reporter, 12.

5 Nolan v. Brooklyn City R. Co. 87 N. Y. 63; Germantown Passenger R. Co. v. Walling, 97 Pa. St. 55; Maguire v. Middlesex R. Co. 115 Mass. 239; Burns v. Bellefontaine R. Co. 50 Mo. 139; Meesel v. Lynn, etc., R. Co. 8 Allen, 234. To the

same effect, see Willis v. Long Island R. Co. 34 N. Y. 670; Hadencamp v. Second Ave. R. Co. 1 Sweeney, 490; Ginna v. Second Ave. R. Co. 67 N. Y. 596; Zemp v. Wilmington, etc., R. Co. 9 Rich. L. 84; Lafayette, etc., R. Co. v. Sims, 27 Ind. 59; Macon, etc., R. Co. v. Johnson, 38 Ga. 409. It seems to have been conceded by the New York court of appeals in one case that the act of a passenger, in riding on the front platform of a street car, is negligence *per se.* But it was laid down that, if there is a presumption of negligence

of a passenger in riding on the rear platform.[1] The reasons for this rule are well stated in a case in Massachusetts: "It is well known that the highest speed of a horse railroad car is very moderate, and the driver easily controls it, and stops the car by means of his voice and reins and his brake. In turning round an angle from one street to another, passengers are not required to expect that he will drive at a rapid rate, but, on the contrary, might reasonably expect a careful driver to slacken his speed. The seats inside are not the only places in which the managers expect passengers to remain; but it is notorious that they stop habitually to receive passengers to stand inside until the car is full, and then stand on the platforms until they are full, and continue to stop and receive them even after there is no place to stand, except on the steps of the platform. Neither the officers of these corporations, nor the managers of the cars, nor the traveling public seem to regard this practice as hazardous; nor does experience thus far seem to require that it should be restrained on account of its danger. There is, therefore, no basis on which the court can decide, upon the evidence reported, that the plaintiff did not use ordinary care. It was a proper case to be submitted to the jury, upon the special circumstances which appeared in evidence."[2]

(*b*) *Cases of Injuries while Riding on Front Platform of Street Car.* Accordingly, if a passenger, while riding on the front platform of a street car, is thrown off, in consequence of an unusual motion of the car, caused by the driver striking or whipping the horses, or by the horses becoming unmanageable, there is a question of fact to go to a jury on the question of the negligence of the defendant and the contributory negligence of the plaintiff.[3] So, where a crowded passenger car was hailed and stopped for a passenger to get on; and he, being unable to get on the rear platform by reason of the crowd, went to the front platform, which was also crowded, but succeeded in standing on the step, on which there were already two persons, by holding on to the hand-rail at the side; and, in turning a curve, several passengers pushed against him, breaking his hold, so that he fell under the wheels and was killed,—in an action by his widow for damages, it was held, affirming the judgment of the court below, that the question whether the deceased was guilty of contributory negligence was properly submitted to the jury.[4]

(*c*) *Passenger Injured while Riding on Rear Platform of Street Car.* A passenger, riding on the rear platform of a crowded street car, was struck by the pole of the car following and seriously injured. It was held that, in riding in this place, he was not guilty of contributory negligence; that,

---

springing from this fact, yet the facts that the car and platform are full of passengers, so that there is no room for more, and that the conductor stops for and receives fare from the passenger so riding, are sufficient to rebut such presumption Clark v. Eighth Ave. R. Co. 36 N. Y. 135. In like manner, where the street car was so crowded that a particular passenger was obliged to stand on the *rear platform*, and was there jerked off the car by its motion and hurt, it was held that the fact that there was no other place for him to stand rebutted the presumption of negligence which might arise from his standing in that position. Ward v. Cent. Park, etc., R. Co. 11 Abb. Pr. (N. S.) 411. So, where a conductor forced a boy, against his remonstrance, to give up an inside seat in the car, and occupy a place on the platform, there was no evidence of negligence on the part of the boy. Sheridan v. Brooklyn, etc., R. Co. 36 N. Y. 39 But this presumption of negligence is not rebutted, when all that appears by the evidence is that the passenger voluntarily seated himself on the front platform. Solomon v. Cent. Park., etc., R. Co. 1 Sweeney, 298. These latter decisions, it is perceived, assume that it is presumptive negligence for a passenger to ride on the platform of a car, and the case last cited expressly so holds; but, in view of the late decision of the court of appeals of New York in Nolan v. Brooklyn City R. Co. 87 N. Y 63, this doctrine must now be regarded as overturned, and it is to be left as a question of fact for the jury, under the circumstances of each case, whether or not the act of the passenger in riding upon the platform of a street car is to be imputed to him as negligence.

[1] Thirteenth, etc.. R. Co. v. Boudrou, 92 Pa. St. 475.

[2] Meesel v. Lynn, etc., R. Co. 8 Allen, 231.

[3] Nolan v. Brooklyn City, etc , R. Co. 87 N. Y. 63.

[4] Germantown Passenger R. Co. v. Walling, 97 Pa. St. 55; S. C. 2 Am. & Eng. R. Cas. 20; 12 Phila. 309.

although the accident would not have happened had he not been in this position, yet the position was but a *condition,* and not the *cause* of the injury; and that the court properly withheld from the jury the question of contributory negligence. The court, in so holding, recognized as the proper test of contributory negligence the affirmative of the question, did the plaintiff's negligence contribute in any degree to the furthering of the injury complained of? If it did, there can be no recovery. If it did not, it is not to be considered. The opinion of the court is, therefore, equivalent to a ruling that the act of the passenger in riding upon the rear platform of the car—the same being crowded—did not contribute in any degree, in a legal sense, to the injury which happened to him.[1]

(2) *Getting on Street Car by the Front Platform.* The rules of a street railway company placarded in its cars may prohibit passengers from getting on the cars by way of the front platform. The front platform of such cars may be surrounded by a railing to prevent passengers from getting on and off in this way; and it may be, under ordinary circumstances, so dangerous for them so to get on and off as to make such attempts negligence. But, nevertheless, circumstances may exist where a passenger will be justified in attempting to get on a street car by this mode; and, although not justified, if such an attempt is made, and the passenger thus wrongfully puts himself in a position of danger, and the driver, seeing his danger, or, owing to the peculiar circumstances, is under the duty of knowing it, nevertheless whips up his horses and throws the passenger down while so attempting to get on, and hurts him, there may be a question of negligence to go to a jury. In such cases as this the doctrine of the court of exchequer chamber in *Tuff* v. *Warman,*[2] that "mere negligence or want of ordinary care or caution would not disentitle him to recover, unless it were such that, but for such negligence or want of ordinary care and caution, the misfortune could not have happened, nor if the defendant might, by the exercise of care on his part, have avoided the consequences of the neglect or carelessness of the plaintiff," may well be held to apply. It was so held, where a street car was so crowded that some of the passengers had to stand on the front platform, and, the car having run off the track, these passengers, at the request of the driver, alighted and lifted it upon the track, after which several of them climbed again upon the front platform over the iron railing extending around it, and one of them; while so attempting to climb upon the front platform, was thrown down, by the act of the driver in releasing his brake and starting the car with a sudden motion, and was dragged for some distance and hurt. It was contrary to the rules of the company for passengers to get upon the car by way of the front platform, and a notice of this was posted in the car. It was held, notwithstanding these facts, that there was evidence of negligence on the part of the defendant, legally sufficient to take the case to the jury. In answer to the objection that there was no obligation on the part of the driver to look after or exercise any care or prudence in regard to persons attempting to board the car by the front platform, because such persons had no right to enter the car in that direction, the court said: "Ordinarily this would be true; but, under the circumstances of this case, taking into consideration that the appellee had paid his fare, and that, owing to the crowded condition of the car, he was obliged to stand on the front platform; that he had gotten off at the request of the driver to help in getting the car again on the track,—in view of this and other facts in this case, there was an obligation on the part of the driver to see that the appellee and others had an opportunity to get on the car again before he started the horses, and if he saw, or by the exercise of proper care might have seen, the position of the appellee, and thereby avoided the injury,

¹Thirteenth, etc., R. Co. v. Boudrou, 92 Pa. St.     ² 2 C. B. (N. S.) 750. 475.

we think the company was liable."[1] But this doctrine does not apply to a state of facts where the last link in the chain of concurring causes leading up to the injury was the negligence of the plaintiff himself, the negligence of the defendant being an intermediate link. Thus, where the step of a street car had been broken off and it had not been replaced, and where the car, moving along in the customary way, was approached by a boy 15 years of age, with the apparent purpose of getting aboard, and nevertheless did not stop for him to get on, and the boy, instead of attempting to get on by the rear platform, made the attempt by the front platform and was thrown down and hurt, it was held that there was no case to go to a jury, even conceding the negligence of the company in running a car whose front platform had no step, and in not stopping the car to enable the boy to get on.[2]

(3) *Passenger Traveling in a Different Sleeping Car from the One to which He had been Assigned.* In a late case in the supreme court of the United States, it was held an immaterial circumstance that the passenger, when injured, was not sitting in the particular sleeping car to which he had been originally assigned. His right for a time to occupy a seat in a car in which a friend was riding, where he was at the time of the accident, was not, the court said, and, under the facts disclosed, could not be, questioned.[3]

(4) *Passenger Riding with His Elbow on the Sill of Car Window.* It has been recently held by the supreme court of the United States not negligence for a passenger having a severe headache to rest his elbow on the sill of the window of the car in which he was riding; and where his elbow was jarred so as to be forced outside the window by reason of the car in which he was riding coming in contact with a freight car which had been negligently left on the side too near the line of the main track, along which the train was passing, so that he received a severe injury which required the amputation of his arm, it was held a case of culpable negligence on the part of the servants of the receiver in charge of the railway, and that the receiver must pay damages.[4]

[1] People's Passenger R. Co. v. Green, 56 Md. 84, 93.

[2] Dietrich v. Baltimore, etc., R. Co. 58 Md. 347. The court said : "The case falls fully within the principle and reasoning of the case of the Railroad Co. v. Jones, 95 U. S. 439, 443." ROBINSON and RITCHIE, JJ., dissented. In this latter case the following was laid down by Mr. Justice SWAYNE as the governing principle in cases of concurring negligence : "One who, by his negligence, has brought an injury upon himself, cannot recover damages for it. Such is the rule of the civil and common law. The plaintiff in such cases is entitled to no relief. But where the defendant has been guilty of negligence also, in the same connection, the result depends on the facts. The question in such cases is (1) whether damage was occasioned entirely by the neglect or improper conduct of the defendant; or (2) whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary care or caution, that, but for such neglect and want of ordinary care and caution on his part, the misfortune would not have happened. In the former case he is entitled to recover; in the latter, he is not." Railroad Co. v. Jones, 95 U. S. 439. This language was cited with approval by the court of appeals of Virginia in Richmond, etc., R. Co. v. Morris, 31 Grat. 200, 203.

[3] Pennsylvania R. Co. v. Roy, 102 U. S. 451, 458.

[4] Farlow v. Kelley, 2 Sup Ct. Rep. 555, (Sup. Ct. U. S. 1883.) There is some authority for the view that the act of a passenger in riding with his elbow on the sill of the window of a steam railway car is not negligence *per se*, even where it projects beyond the side of the car. Chicago & Alton R. Co. v. Pondrom, 51 Ill. 333, 340; Spencer v. Milwaukee, etc., R. Co. 17 Wis. 487. The author ventures to think that this is the better view, and he is glad to find his view sustained to some extent by the decision of the supreme court of the United States, above cited. The reason which supports this view is that the windows of railway passenger coaches being at a height at which it is convenient for passengers to rest their elbows upon them, tired passengers are tempted to do this; and those who are acquainted with railroad travel know, as a fact, that passengers generally do this. I do not see how a thing which people in a given situation generally do can be pronounced negligence as matter of law. I do not see how railroad managers who permit obstacles to come so near their passenger coaches as to strike the arms of passengers thus exposed can, in view of the high degree of care which the law puts upon them as carriers of passengers, ask the law to excuse them and to put the blame upon the passengers. The weight of authority, however, seems to be in favor of the view that the act of the passenger in riding with his arm

(5) *Passenger Standing in Door of Cabin Thrown Down by Boat Striking Wharf with Undue Violence.* It is not negligence for a passenger on a ferry-boat, as the boat approaches its slip, to rise from his or her seat in the cabin and move forward and stand in the doorway of the cabin, awaiting an opportunity for exit from the boat; and if, while so standing, he or she is thrown down and injured in consequence of the boat being permitted to strike the slip with undue violence, it is a case for damages against the owner.[1]

§ 12. WHAT IF PASSENGER RIDES IN SUCH POSITION WITH THE KNOWLEDGE OR CONSENT OF THE CONDUCTOR. (1) *General Views.* The courts generally hold, in such cases, that the act of the conductor in inviting the passenger to ride in a dangerous and improper place on the train, or the fact that the passenger so rides with the knowledge or consent of the conductor, will be an answer to the objection of contributory negligence on the part of the passenger.[2] A case in Massachusetts is to the contrary effect, and suggests a very good reason for the contrary view. A passenger had been injured while riding upon the platform of one of two colliding cars, with the express permission of the conductor. WELLS, J., said: " It is not enough for the plaintiff to show that Hickey, the passenger, was rightfully upon the platform. Because he might rightfully occupy whatever place the conductor should permit, it does not follow that he would do so at the risk exclusively of the corporation." [3] In like manner, in a late decision in Michigan, it is said that this rule is plainly not one of universal application: "Regard must be had to the passenger's capacity to look out for himself, to the opportunity there may be to get a safer position, to the distinctness and extent or degree of the peril, and so on. Take the case of a child, and the case of a man every way qualified to take care of himself; the case where the position given seems tolerably safe and no better is perceived, and the case where it is manifestly one full of danger, and a safe one is known which is equally accessible. It would be very unreasonable to apply the rule equally to all. May the ordinary passenger, with his eyes open and with abundant accommodations before him which are safe, accept an invitation from the carrier to ride on the cow-catcher, and then, if injury arise from it, be allowed to set up the invitation as a legal answer to the charge of contributory negligence? To conclude that he might would be to permit a person of full capacity to exempt himself from the duty and responsibility appertaining to him as a moral being, and, in substance, to stultify himself, in order to cast a liability upon another." [4] The supreme court of Pennsylvania has lately taken the same view. " If," said PAXSON, J., " the passenger thus recklessly exposing his life to possible accidents were a sane man, more especially if he were a railroad man, it is difficult to see how the knowledge, or even assent, of the conductor to his occupying such a position could affect the case. There can be no license to commit suicide. It is true, the conductor has control of the train, and may assign passengers seats. But he may not

out of the window is *per se* such negligence as will prevent him from recovering damages for an injury received by his arm coming in contact with some external object while in such position. Todd v. Old Colony, etc., R. Co. 3 Allen, 18; S. C. 7 Allen, 207; Pittsburgh, etc., R. Co. v. Andrews, 39 Md. 329; Indianapolis, etc., R. Co. v. Rutherford, 29 Ind. 82; Morel v. Miss. Ins. Co. 4 Bush, 535; Louisville, etc., R. Co. v. Sickings, 5 Bush, 1; Holbrook v. Utica, etc., R. Co. 12 N. Y. 236. In the case of Pittsburgh, etc., R. Co. v. McClurg, 56 Pa. St. 294, the court, in holding as above stated, expressly overruled the earlier case of New Jersey, etc., R. Co. v. Kennard, 21 Pa. St. 203. In Laing v. Colder, 8 Pa. St. 479, it was held that if the passenger's extended arm was broken by coming in contact with a bridge, the carrier would not be responsible for the injury, if he gave timely notice of the danger, so that the plaintiff might have avoided it.

[1] Camden, etc., Ferry Co. v. Monoghan, 11 Reporter, 717, (Sup. Ct. Pa. 1881.)

[2] O'Donnell v. Allegheny, etc., R. Co. 59 Pa. St. 239; Carroll v. New York, etc., R. Co. 1 Duer, 571; Watson v. Northern R. Co. 24 U. C. Q. B. 98; Burns v. Bellfontaine R. Co. 50 Mo. 139; Clarke v. Railroad Co. 36 N. Y. 135; Kentucky Cent. R. Co. v. Thomas, 79 Ky. 160, 165; Dunn v. Grand Trunk R. Co. 58 Me. 187.

[3] Hickey v. Boston, etc., R. Co. 14 Allen, 429.

[4] Downey v. Hendrie, 46 Mich. 498, 501, opinion by GRAVES, J.

assign the passenger to a seat on the cow-catcher, a position on the platform, or in the baggage car. This is known to every intelligent man, and appears upon the face of the rule itself. [The learned judge here referred to the rule set out in the preceding section.] He is expressly required to enforce it, and to prohibit any of the acts referred to, unless it might be riding on the cow-catcher, which is so manifestly dangerous and improper that it has not been deemed necessary to prohibit it. We are unable to see how a conductor, in violation of a known rule of the company, can license a man to occupy a place of danger so as to make the company responsible. It is otherwise as to rules which are intended merely for the convenience of the company or its passengers. * * * I am not aware that it has been decided in any well-considered case that a passenger may, as a matter of right, ride in the baggage car at the risk of the company. In a few cases it has been held that the assent of the conductor is sufficient to charge the latter with the consequences of such act; that it amounts to a waiver of the rule forbidding passengers to ride in the baggage car. But how can a conductor waive a rule which, by its very terms, he is commanded to enforce? He might neglect to perform it, and, when the rule is a mere police arrangement of the company, such neglect may, perhaps, amount to a waiver as between the passenger and the company. But when the rule is for the protection of human life, the case is very different. We are not disposed to encourage conductors, or other railroad officers, in violating reasonable rules which are essential to the protection of the traveling public. If it is once understood that a man who rides in the baggage car in violation of the rules does so at his own risk, we shall have fewer accidents of this description."[1]

(2) *Illustrative Cases.* Accordingly, where a passenger got upon a street car at the rear platform, entered the car in which there were unoccupied seats, passed on through the car, and, as he testified, at the invitation of the driver, took a seat upon the driving-bar or guard of the front platform, and the driver, after the car had moved on for a space, struck the horse, whereby the car gave a jerk which tipped the plaintiff off, so that a wheel passed over his arm and injured him, it was held that he could not recover damages, and that such a case ought not to go to a jury.[2] On the other hand, having stopped at a station, the conductor told the plaintiff, who was in charge of cattle on the train,

[1] Pennsylvania R. Co. v. Langdon, 92 Pa. St. 21, 28; S. C. 1 Am. & Eng. R. Cas. 87. The court met with no difficulty in deciding the case upon the obvious reason which ought to govern; but it did have difficulty in dealing with the adjudged cases, several of which have held that the assent of the conductor to the act of the passenger in riding in a dangerous and improper place, will prevent the company from setting up such act of the passenger as contributory negligence. "We are not aware," continued the learned judge who delivered the opinion, "that the foregoing views conflict with any of our own cases. They may not harmonize with some of the *dicta* which lie scattered through them; but a careful examination of the points decided shows no serious embarrassment." He then proceeded to distinguish the cases of O'Donnell v. Allegheny R. Co. 59 Pa. St. 239; Lackawanna, etc., R. Co. v. Chenewith, 52 Pa. St. 382; Creed v. Pennsylvania R. Co. 86 Pa. St. 139; Dunn v. Grand Trunk R. Co. 58 Me. 187; Isbell v. New York, etc., R. Co. 27 Conn. 393; Keith v. Finkham, 83 Me. 501; Huelsenkamp v. Citizens' R. Co. 34 Mo. 51; S. C. 37 Mo. 537. The case of Jacobus v. St. Paul, etc., R. Co. 20 Minn. 125; S. C. 1 Cent. Law J. 371, was not regarded as entitled to weight as authority. "The reasoning of the court," said Paxson, J., "is not satisfactory, and the authorities do not sustain the position assumed by the learned judge who delivered the opinion." On the other hand, the learned judge referred to the case of Robertson v. New York, etc., R. Co. 22 Barb. 91, in which it was held that where one rode on the engine in violation of the known rules of the company, and was there injured, he could not recover, notwithstanding he was there with the assent of the engineer; and also the case of Pittsburgh, etc., R. Co. v. McClurg, 56 Pa. St. 294, in which it was held that where a traveler "puts his elbow or his arm out of the window voluntarily, without any qualifying circumstances impelling him to do it, it is negligence *in se;* and where that is the state of the evidence, it is the duty of the court to declare the act negligence in law." It may be observed that the doctrine of the case last cited has been denied in several of the courts. Ante, § 11. (¹) note.

[2] Downie v. Hendrie, 46 Mich. 498, 501.

that some cattle were down in the train behind them, and that he had better go and look after them. Two men, who were sitting in the caboose when this remark was made, went with their pole, and, while one of them was in an exposed position, endeavoring to raise a steer which had fallen down in the car, an express train swept by, striking him and causing severe injury. It was held a case for the jury. The person injured was not, under the circumstances, guilty of contributory negligence.[1]

§ 13. WHAT IF PASSENGER ASSUMES EXPOSED POSITION AT REQUEST OF UNAUTHORIZED SERVANT OF CARRIER. A brakeman on a freight train is not in charge of the train, where there is also a conductor upon it, and has no power to give directions to other persons upon the train. Accordingly, where a boy 13 years of age got upon a freight train without the knowledge and consent of the persons in charge of the train, but, on being discovered, was permitted to remain there, and was required by a brakeman to help brake, and assist in coaling the engine, and was told to go on top of one of the freight cars and adjust some loose lumber which was about to fall off, and, while so doing, was thrown off the car and hurt, in consequence of a piece of the lumber striking a post which the train was passing, it was held that there could be no recovery of damages from the company. The ruling was placed on the ground that the brakeman, in giving the order, was not acting within the scope of his employment, and accordingly that the railroad company was not liable. At the same time it was conceded that the boy, although he had paid no fare, was entitled to the rights of a passenger. The fact that he had gone into a dangerous and improper situation would not preclude him from recovering damages, since it did not appear that the Missouri statute, below quoted, which required the posting of printed regulations in a conspicuous place to warn passengers not to ride in dangerous places on the train, had been complied with.[2] The court quotes the language of AGNEW, J., in a Pennsylvania case,[3] that the youth of the plaintiff "may excuse him from concurring negligence, but it cannot supply the place of negligence on the part of the company, or confer authority on one who has none."

§ 14. STATUTORY REGULATIONS ON THE SUBJECT. In some of the states there are, or have been, statutory regulations on the subject, like the following in Missouri: "In case any passenger on any railroad shall be injured while on the platform of a car, or in any baggage, wood, or freight car, in violation of the printed regulations of the company, posted up at the time in a conspicuous place inside of its passenger cars then in the train, such company shall not be liable for the injury: provided, said company at the time furnish room inside the passenger cars sufficient for the proper accommodation of the passengers."[4] Under such a statute, it has been said: "The exemption of the company is made to depend upon a violation by the passenger of the printed regulations posted up in the passenger cars only. They are not required to be posted up in a baggage car. It is presumed that no passenger will ever be found there. * * * This statute proceeds again upon the general principles of law in relation to contributory negligence; and it supposes that the passenger who has had the warning of this notice, and who still ventures to place himself in a situation so dangerous as a baggage car, is to be considered as contributing by his own negligence to produce the injury, and therefore that the company is

---

1 Fowler v. Baltimore, etc., R. Co. 18 W. Va. 579.

2 Sherman v. Hannibal, etc., R. Co. 72 Mo. 62.

3 Flower v. Railroad Co. 69 Pa. St. 216; S. C. 8 Am. Rep. 251. See, also, Snyder v. Hannibal, etc., R. Co. 60 Mo. 413; Towanda Coal Co. v. Heeman, 86 Pa. St. 418; Chicago, etc., R. Co. v.

Casey, 9 Bradw. 632, 639; Chicago, etc., R. Co. v. Mitchie, 83 Ill. 427. Compare Pennsylvania R. Co. v. Hoagland, 78 Ind. 203; S. C. 3 Am. & Eng. R. Cas. 436.

4 Rev. St. Mo. 1855, p. 438. For a similar statute in New York, see Laws N. Y. 1850, c. 140, § 46; 3 Edm. St. at Large, p. 636, § 46.

not to be held liable in such case." [1]   And it is to be inferred from other portions of the opinion in the case just cited, that, where notices are posted in compliance with such a statute, the consent of the conductor to the act of the passenger in riding in an improper and dangerous place would not exonerate the latter from the imputation of contributory negligence.   It has been held in New York that the company must strictly comply with the terms of such a statute in order to secure its benefit.[2]   A notice that "passengers are forbidden to get on or off the car while in motion; or on or off the front platform; or on or off the side, except nearest the sidewalk,"—manifestly does not exempt the company from liability to a passenger for an injury sustained while merely riding upon the front platform.[3]                              SEYMOUR D. THOMPSON.

  *St. Louis.*

[1] Higgins v. Hannibal, etc., R. Co. 36 Mo. 418, 435.

[2] Carroll v. New York, etc., R. Co. 1 Duer, 571; Clark v. Eighth Ave. R. Co. 32 Barb. 657; S. C. 36 N. Y. 135; Colgrove v. Harlem, etc., R. Co 6 Duer, 382; S. C. 20 N. Y. 492.

[3] Nolan v. Brooklyn City, etc., R. Co. 87 N. Y. 63.